[Filed March 22, 1886.]

## STATE *v.* MULTNOMAH COUNTY.

ASSESSMENT—TAXATION—LEGISLATIVE AUTHORITY OVER.—It is the duty of the legislative assembly to levy no more than enough revenue to defray the necessary expenses of the state for the fiscal year and pay any excess over income of a previous year. But the question, what is a sufficient sum for such purposes, is one that belongs to the legislature alone, and when it has determined the rate to be levied, such determination is conclusive upon the counties.

SAME—LEVY—DOUBLE ASSESSMENTS.—The fact that the assessment roll returned to the state by any county, on which the state levy is made, contains double assessments on which the county is unable to collect the tax so levied, does not entitle the county to a corresponding deduction from the amount to be paid the state.

SAME—INTEREST ON DELINQUENT TAXES.—Interest is not allowed upon the recovery by the state from a county of a balance of unpaid taxes.

MULTNOMAH COUNTY. Defendant appeals. Affirmed, except as to allowance of interest.

*Raleigh Stott* and *Samuel Stott*, for Appellant.

*P. L. Willis*, for the State.

THAYER, J.   This appeal comes here from a judgment rendered upon an agreed case.   The following are the facts agreed upon between the parties to said case:

"In the year A. D. 1883, at the time prescribed by law therefor, the defendant caused its assessor to duly make out an assessment roll of the tax-payers and taxable property in said Multnomah County, according to the provisions of the statutes of this state relating thereto, to serve and be used as a basis of taxation for revenue for the purposes of both of the parties hereto, for said year, and the County Court duly examined, corrected, and approved said assessment roll; and thereafter said County Court levied a tax upon the taxable property of said county for state purposes, for said year of 1883, which tax amounted to the sum of $98,857.38, and a tax which amounted to the sum of $176,531.05, upon said property for county purposes, for said year; and thereafter, and prior to the twenty-sixth day of December, 1883, the county clerk of said county, as by law in such cases provided, transmitted to the secretary of state of the plaintiff a certified copy of said assessment roll, under the seal of said County Court; that on and by said assessment roll, after it was so corrected and approved, it appeared that the taxable property then in said Multnomah County was $17,653,105; that upon receiving said copy said secretary of state duly estimated and ascertained the amount of tax to be collected in said county of Multnomah, for state purposes, for said year of 1883, and thereby found such amount to be $98,875.38, and as by law in such cases provided, made a statement thereof, and thereafter, on the twenty-sixth day of December, 1883, at Salem, Oregon, duly delivered a certified copy of such statement to the treasurer of state of the plaintiff, who recorded the same in a book kept for that purpose, and also then and there charged the defendant with $98,875.38, the

amount of tax so ascertained to be raised in said county of Multnomah; that prior to the first Monday of April, 1884, there had been duly collected and paid in to the county treasurer of said county, of said tax by said County Court levied, more than the sum of $98,875.38; that no part of said tax has been paid by the defendant to the plaintiff, except the sum of $92,647.51; that the aggregate amount of the taxable property in the state of Oregon, as it appeared on the assessment rolls of the several counties for the year 1883, certified to the secretary of state by the clerks of the several counties, was $75,306,953; the total amount of tax necessary to meet and pay all the appropriations made by the legislative assembly of the state of Oregon for said fiscal year 1883 was $392,500; that on the said assessment roll of 1883, upon which the said charge of state tax against the county of Multnomah was made by the state treasurer on the twenty-sixth day of December, 1883, for state purposes, for the fiscal year 1883, there were double assessments against land, by the same land being more than once assessed by said assessor in making said assessment roll; that the amount of state tax charged and levied against the said property so more than once assessed was $356.72; that the sheriff and tax collector of Multnomah County, as provided by law, upon the discovery of said double assessment, collected only the taxes justly due thereon, and collected no tax thereon; that in making said assessment and assessment roll, the assessor of said county, by mistake, returned as taxable property a greater amount than should have been assessed to certain persons therein named; that the state tax levied and charged in said roll against the property of said persons in excess of what should have been assessed against them amounted to $91.23; that the sheriff and County Court of said county prior to this date, and at

the time appointed by law, duly remitted the said sum upon the said persons so over-assessed, upon said persons duly making and filing their affidavits and lists of property liable to taxation in said county as provided by law; that the sheriff of said county was, on the fifteenth day of March, 1884, duly restrained by an order of the Circuit Court of the United States for the district of Oregon from collecting $1,188.10 in said roll assessed and charged as state tax for the fiscal year 1883 against the Dundee Mortgage and Trust Investment Company, in a suit wherein said company was plaintiff and the sheriff of said county and others were defendants, and was so restrained until the fourth day of September, 1884, and on said day said court duly decreed and perpetually enjoined this defendant from collecting said tax; that the defendant has proceeded, at the times and in the manner provided by law, to collect the state tax levied and charged against property in Multnomah County in said assessment roll for the year 1883, and has in all things complied with the statutes in that behalf, and after due diligence, and exhausting all legal remedies in such cases provided by law, has collected of said tax only $92,647.51, which said sum has been paid to the state of Oregon by the county treasurer of Multnomah County long prior to this date; that after having complied with the law in all things as aforesaid, the sheriff and tax collector of Multnomah County, on the first Monday in April, 1884, made out a statement, duly verified, of the taxes assessed on said roll then remaining unpaid, including therein a description of the land doubly assessed; that at the date of said sheriff's statement there remained due and unpaid and delinquent of the said state tax $9,269.88; that thereafter the county clerk made from said delinquent tax roll a true and correct list of the taxes returned as unpaid, and a description of the lands and property

therein assessed, and the names of the persons to whom said taxes were charged, and on the twenty-second day of April, 1884, delivered the same to the sheriff with a writ attached thereto, under his hand and seal of the County Court, as by law required; that thereafter said sheriff proceeded under said writ as by law required, and duly levied upon all the personal property that could be found belonging to said delinquents, and upon the real property of the said delinquent tax-payers in said delinquent list described and duly advertised, and sold the same in accordance with law prior to the first Monday in July, 1884; that after having sold said property as aforesaid, and used due diligence in the execution of said writ, there remained unpaid and uncollected, and still remains unpaid and uncollected, of said state tax as levied and charged in said roll, $6,209.87; and that no other property can be found by this defendant from which to collect said taxes."

Upon these facts the Circuit Court rendered the judgment appealed from, which included a principal sum of $6,209.87, and interest thereon at the rate of eight per cent per annum from and after the seventh day of April, 1884, amounting to $731.36, making in all $6,941.23. The grounds of the appeal are, that the court erred in deciding that the state was entitled to recover from the county either the principal sum or the interest. As stated in the respondent's brief:

" The mode of proceeding in the matter of the levy and collection of state taxes in Oregon, at the time the tax claimed herein was levied (1883) and became due, was as follows: The assessor of each county of the state made out an assessment roll (Code, p. 751, sec. 16, amended by Laws of 1880, p. 51) to be used as a basis of taxation for revenue for state and county purposes for a year. The county judge, clerk, and assessor, as a board of equaliza-

tion (Code, p. 756, sec. 37), met on the last Monday in
August (Code, p. 752, sec. 19), and examined and cor-
rected the assessment roll. (Code, pp. 756, 757, secs. 37–
40.) The County Court then, at its September term, re-
examined, corrected, and approved the assessment roll
(p. 760, sec. 54), and estimated, determined, and appor-
tioned, or levied, the amount of state and county tax re-
quired by law to be raised in the county (p. 760, secs.
55, 56). Within forty days thereafter, the county clerk
transmitted to the secretary of state a certified copy of
the corrected and approved roll (p. 760, sec. 59).
Upon receiving such copy, the secretary of state esti-
mated the amount of state tax to be collected in the
county, and made a statement thereof, and delivered a
certified copy of such statement to the state treasurer,
and the state treasurer then charged the county with the
amount of the tax so ascertained to be raised (p. 761,
sec. 60). On or before the first Monday of February next
following the making of such charge, the county treas-
urer was to pay over to the state treasurer the amount of
state taxes so charged to the county (p. 766, sec. 80)."

It is not claimed but that the statement made by the
secretary of state of the estimated amount of the state
tax, certified and delivered to the state treasurer, and the
amount charged the county of Multnomah by the state
treasurer, referred to in the agreed statement of facts,
was regular and correct upon the face of the proceedings.
Unless, therefore, the appellant is allowed to go behind
the proceedings, and claim a drawback on account of
some matter *dehors* the record, the respondent's princi-
pal claim mnst be conceded to be valid. The appellant's
counsel claims that the legislative assembly of the state
has no right to provide for raising any more than a suf-
ficient revenue to defray the expenses of the state for
each fiscal year, and to pay the interest on the state

debt, if there be any; and that the $92,647.41, paid by the appellant, as shown in the agreed statement, was more than its share of revenue necessary for that purpose, and to pay all deficiencies for the previous years, as provided in section 6 of article 9 of the constitution; and that the state treasurer had no right to charge any more than that sum against the appellant.

In my opinion, it is the duty of the legislative assembly to provide no more than an amount of revenue sufficient to defray the necessary expenses of the state for the fiscal year. The constitution intends that no tax shall be levied to create a revenue beyond the necessary expenses liable to be incurred, and to cover any excess over the income of a previous year. The authority of the legislative assembly is limited in that particular. But it is impossible to determine just what rate of taxation would cover the estimated expenses of a fiscal year. It would be very liable to produce a few thousand dollars too much, or not enough. If, however, it resulted in producing too much, it would not follow that a county could withhold paying over the amount in excess of its share. The constitutional limitation could not be enforced in that way, as it would cause confusion, and terminate in the counties paying over to the state no more than they deemed to be their share of the revenue necessary to defray its expenses for the fiscal year. That question must be left to the legislative assembly, and when it determines upon the rate per cent of tax to be levied, it is conclusive upon the counties.

The appellant's counsel also insisted that a rebatement should be made in favor of the appellant, on account of the failure to collect the full amount of state and county taxes assessed, but the statute does not so provide. It requires the several county treasurers to pay over to the state treasurer, in gold and silver coin, the amount of

state taxes charged to their respective counties, which tax shall be paid out of the first of such moneys collected and paid in to the county treasurer. Any other mode would occasion uncertainty in securing state revenues. The counties have control of the entire machinery for assessing and collecting the tax, and ought to be responsible for a failure to secure the full amount levied. Any serious failure in the matter may be relieved against by the legislature, while the courts have no alternative but to enforce the law as they find it upon the statute-books. Circumstances often occur which occasion a hardship upon a county, but they are liable to happen in any county; and as between the counties, they adjust themselves as equitably as they could be under any general rule of law. The state tax is comparatively insignificant —does not amount to half the burden of school taxes in many of the districts in the state; and as the taxable property within the state increases, it will continue to be lessened, if state affairs are prudently managed.

I am unable to discover that the appellant has any defense as against the payment of the principal sum claimed by the respondent. There is, however, a question as to whether interest can be exacted upon the sum that should have been paid over from the county to the state treasurer. "Interest" is defined to be a profit or recompense allowed to be taken from the borrower by the lender. Blackstone calls it a price or reward, concerning which he says: "Many good and learned men have, in former times, very much perplexed themselves and other people by raising doubts about its legality *in faro conscientiæ;*" but he seems to be of the opinion "that since all other conveniences of life may either be bought or hired, there is no greater oppression in taking a recompense or price for the hire of money than any other convenience, but that to demand an exorbitant

price is equally contrary to conscience for the loan of a horse or the loan of a sum of money; that a reasonable equivalent, however, for the temporary inconvenience which the owner may feel for the want of it, and for the hazard of his losing it entirely, is not more immoral in the one case than in the other; that a capital distinction must be made between a moderate and exorbitant profit, to the former of which is given the name of 'interest,' to the latter the truly odious name 'usury,' which is well summed up by Grotius: 'If the compensation allowed by law does not exceed the proportion of the hazard run, or the want felt by the loan, its allowance is neither repugnant to the revealed nor the natural law; but if it exceeds those bounds, it is then oppressive usury; and though the municipal laws may give it impunity, they never can make it just.' " (2 Bla. Com. 455, 456.)

Upon these principles interest is allowed to be taken by law, and the legislature has, from time to time, attempted to regulate its rate in order to prevent oppression and uncertainty. It is allowed where a rate has been stipulated in the given case within the limit authorized by the legislature, and is recoverable in other cases where damages are recovered, but is not allowed to be recovered in the latter case only by reason of withholding a debt, *ratione detentione debitur.* The statute of the state provides the rate of interest upon money after the same becomes due on judgment and decree for the payment of money; on money received to the use of another, and detained beyond a reasonable time, without the owner's consent, expressed or implied; or upon money due upon the settlement of matured accounts, from the day the balance is ascertained; and on money due or to become due, when there is a contract to pay interest, and no rate specified. This statute was intended, doubtless, to cover

every case of the allowance of interest; but its provisions are general, and must be construed in accordance with the reason of the law upon the subject. None of its provisions are applicable, in terms, to the case under consideration, unless it be the one providing for the allowance of interest " on money received to the use of another, and detained beyond a reasonable time without the owner's consent, expressed or implied;" and I am unable to discover how that could be applied within the principle upon which interest is allowed.

The provision alluded to evidently relates to cases where the money detained belonged to the party for whose use it was received, and it leaves the inference that the detention could have been consented to by the party. It is the ordinary case of neglecting to pay over money to a party to whose benefit it has been received, and interest is allowed for its use for the reason that the party entitled to it has been deprived of its use during the period of its detention, and in contemplation of law, has suffered damages to the extent of such interest. The case, in fact, is nowise analogous to the one under consideration. The respondent was not the owner of the money. It was a legal contribution by the people of the county to assist in defraying the expense of administering the affairs of the commonwealth. It was a part of its revenue derived from taxation, and no more belonged to the state when in the hands of the county treasurer than when paid over to the tax collector. The state officials had power and it was their duty to compel its prompt payment, and that was the extent of their authority. Because they neglected their duty in that particular did not authorize them to exact interest—they had no right to extend the time of its payment. In *Danforth* v. *Williams*, 9 Mass. 324, a tax collector who had neglected to enforce the payment of

a tax claimed interest upon the tax for its non-payment, after it was due; but the court refused to allow it—said it would be offering a bounty for negligence if allowed. I cannot believe that the law will allow interest in a case when the parties having the management of the affair have no power to contract for the payment of interest. There can be no interest unless there is a debt, except where it is allowed as damages, and then the party recovers interest because he has been deprived of the use of the money or property from which he could have derived profit or saved loss; and a tax is not a debt. (*Lane Co.* v. *Oregon,* 7 Wall. 71.) I am unable to discover any principle upon which interest could have been recovered in the action, and apprehend that it would be bad policy to allow it in such a case. The interest allowed by the Circuit Court must therefore be remitted; otherwise the judgment appealed from will be affirmed. This will allow costs to the appellant on the appeal.