# STATE v. BOARD OF COMMISSIONERS OF LARAMIE COUNTY.

REVENUE—LIABILITY OF COUNTY TO STATE—CERTIFICATE OF DOUBLE OR ERRONEOUS ASSESSMENTS.

1. In certifying double and erroneous assessments to the State for the purpose of obtaining credit for the amount thereof upon its liability for the tax levy of any particular year, a county is not limited to the time within which by statute the county collectors of revenue are required to exhibit their annual accounts and vouchers or to make their annual settlements with the financial officers of the State for such year.

2. Such annual settlements are not so conclusive as to preclude a county from having credit for double or erroneous assessments, although the same are subsequently certified.

(Groesbeck, C. J., dissenting.)

[Decided August 29, 1893—Re-hearing denied February 28, 1894.]

ERROR to the District Court of Laramie County. HON. RICHARD H. SCOTT, Judge.

Action by the State against the board of county commissioners of the county of Laramie for a balance alleged to be due upon the tax levy of the year 1888. The amended petition alleged that the levy for territorial tax in that year originally due from the county amounted to $64,417; that there had been paid thereon $50,770.27, and that a credit for double and erroneous assessments had been allowed amounting to $5,629.43, making a total credit of $56,399.70. That

on December 17, 1888, there was presented on behalf of the
county a claim for rebate on account of double and erroneous
assessments, including $967.41 of taxes which had been levied
prior to 1888, and that the same had not been previously
certified. The same was disallowed by the auditor. That on
December 16, 1889, a similar claim was presented, including
$7,054.73 for taxes which had been levied in the year 1888,
but said claim had not been previously presented. That
claim was disallowed by the auditor. It was admitted that
the sums so claimed and disallowed represented double or
erroneous assessments for the years mentioned, but it was fur-
ther alleged that in December, 1888, immediately following
the presentation of the claim for credit or rebate, filed De-
cember 17, 1888, the auditor did audit, adjust and settle the
claim of Laramie county for rebates for that year, and notified
the territorial treasurer thereof. It was therefore contended
that the claim made in December, 1888, for taxes levied in
prior years, and that made in December, 1889, for taxes levied
in 1888, were not presented or certified in time to entitle the
county to any credit therefor. A general demurrer was filed,
which was sustained, and judgment finally entered in favor of
defendant. The State prosecutes error.

*Charles N. Potter*, Attorney General, for plaintiff in error.

The sole question is, when must a claim be made under sec-
tion 3836 Rev. Stat., 1887, to entitle a county to credit for
double or erroneous assessments? Is there any limit? A
strict construction of the statutes requires a claim for rebate
upon the tax for any year, to be presented on or before the
third Monday of December of that year; and certainly not later
than the time in January following when the county treasurer
is required to settle with the State treasurer. (Rev. Stat., Secs.
3837 & 1698—also 1699-1704.) Even if the provisions of Sec.
1698 were directory as to time, it must not be so construed
as to render the time without any limit. A full and complete
settlement cannot be made unless the accounts are all made
up and adjusted. There is no provision for subsequent settle-
ments.

On petition for rehearing: It is not a question whether the settlements are conclusive or not. The county should exercise diligence in collecting the taxes, and discovering mistakes in the assessments. The whole purpose of the statutes is to fix a time within which a county may claim credit for such mistakes. That time ought to, and does end when the liability of the county collector of revenue becomes complete. The State is entitled to the tax from the county, whether it is collected or not. The liability of the county is not fixed by the settlement, strictly speaking, but by operation of law.

*J. A. Van Orsdel,* County Attorney, for defendant in error.

A county occupies very much the same relation to the State as to payment of taxes that a citizen occupies to the county. The taxes are not delinquent until November 30. (Rev. Stat., Sec. 3819.) To enforce the collection of the tax, the collector would be required to give four weeks notice by publication before he could expose the property for sale. (Rev. Stat., Sec. 3812.) This would extend the time to January. The law also provides that if any person shall pay any tax which shall be thereafter found to be erroneous or illegal, the money may be refunded to the tax payer. Section 1698 is directory as to time. The accounting had under that section is only of matters up to the date of such accounting. The proposition that the county cannot thereafter have credit for erroneous assessments not previously discovered is unfair and inequitable. Statutes providing for revenue are to be liberally interpreted in favor of the tax payer (Sutherland on Stat. Const.). So long as the county remains liable for erroneous assessments it has the right to certify the same to the State, and hold the same either as a rebate, or as a claim which the State is bound under the law to refund.

On petition for rehearing: Under the revenue laws the State and county stand in the relation of principal and agent. Their interests are not adverse. Very few erroneous assessments, considering the time for collecting taxes, could become known to the county before the first Monday in January, the date of the settlement with the State treasurer; therefore

it could not have been intended that a full and complete settlement which would absolutely close the matter, should be made at that time.

CONAWAY, JUSTICE.

This cause comes up on petition and general demurrer. The district court sustained the demurrer of defendant to plaintiff's petition. Plaintiff declined to plead further, and judgment was rendered in favor of defendant. This is assigned as error.

The action is by the State of Wyoming against the county of Laramie for the recovery of $967.41 on account of taxes overdue and unpaid for the year or years prior to 1888; and for the recovery of $7,054.73 on account of taxes overdue and unpaid for the year 1888. Defendant in error denies its liability for these taxes because they are founded on double or erroneous assessments duly certified as such, and demurs to the petition as showing such facts. Plaintiff in error contends that such certification of double and erroneous assessments and the claim for credits on account thereof were not made by or on behalf of the county in time to be considered. The double and erroneous assessments mentioned as occurring prior to 1888 were rebated by the county during that year, and the sum of $967.41 of territorial taxes consisting of such double and erroneous assessments occurring prior to the year 1888 was rebated by the county of Laramie to the tax payers during the year 1888; and such double and erroneous assessments were formally certified and claim for a credit of said sum made on behalf of the county of Laramie in its annual settlement with the territory for the year 1888. This claim was not allowed by the territorial auditor, but the county declined to abide by his decision, and withheld the sum from the amount found due from the county to the territory by the territorial auditor at the annual settlement for the year 1888, and has failed and refused to pay the sum into the territorial or State treasury.

The double and erroneous assessments mentioned as occurring during the year 1888 were rebated during the year 1889,

and the sum of $7,054.73 of territorial taxes, together with other taxes, consisting of such double and erroneous assessments occurring during the year 1888, were rebated by the county of Laramie to the tax payers during the year 1889; and such double and erroneous assessments were certified, and claim for a credit of said sum made on behalf of the county in its annual settlement with the territory for the year 1889. This claim was not allowed by the territorial auditor, but the county declined to abide by his decision and withheld this sum from the amount found due from the county to the territory by the territorial auditor at the annual settlement for the year 1888, and has failed and refused to pay this sum into the territorial or State treasury. This, in brief, is the showing of facts made by the petition, to which a general demurrer was sustained.

It is clear that the taxes in controversy consist of double and erroneous assessments—assessments that never should have been made.

The county is responsible to the State for the entire amount of tax levied for territorial or State purposes on the taxable property within the county, whether collected or not, except "such amounts as are certified to be double or erroneous assessments." Rev. Stat., Sec. 3836.

The amounts sued for in this action are so certified, but it is urged that such certification came too late. This contention is based upon the sole ground that the annual settlements of the "collectors of the revenue," with the territorial or State auditor are final and conclusive. We have no statute expressly making them so. It is true our law, R. S., Sec. 1700, authorizes the auditor to issue summary process upon this settlement against the collector for the amount found due the State, with penalties and forfeitures. But even under such statutes as this, by a consensus of authorities singularly uniform, the settlement by the auditor is not conclusive. The courts may correct it if erroneous. It is not in the nature of a judgment of a court. It is not conclusive against the collector himself who participates in it. Cooley on Taxation, 2nd Ed., p. 718. By a much stronger reason it is not con-

clusive against the county. This disposes of the only question presented in the record.

Something was said in argument about Sec. 3837, R. S., requiring county treasurers to make, under a penalty, a full and complete settlement with the territorial or State treasurer on the first Monday in January in each year for the tax levy of the preceding year. No such settlement is referred to in the petition. The question is not raised upon this settlement but upon the preceding settlement with the auditor. The county treasurer makes both settlements. If by either or both, he can give away the county revenue or bind the county to the payment of unjust or unauthorized charges in favor of the State, and make such injustice final and conclusive upon the county, it is a bad state of affairs. We think that such is not the law of this case.

The judgment of the district court is affirmed.

CLARK, J., concurs.


GROESBECK, C. J., dissenting.

The divergence in views between the other members of this court and myself is on the construction of the various statutes cited or quoted from in the majority opinion. It will not be disputed that it is competent for the State to make the county or other district of taxation responsible and liable as principal debtor for the quota of State tax assessed within it. Cooley on Taxation, 468.

Provisions to this effect are common in statutes and our statute so provides in distinct terms. The only exception in our statute making the county responsible to the territory or the State for the amount levied for territorial or State purposes is for such amounts as are certified as double and erroneous assessments. No allowance or credit can be given to any county, other than this, of the tax levy remaining uncollected. Rev. Stat., Sec. 3836. Sec. 3837 following provides for an annual settlement by the county treasurer, who is collector of taxes for his county, with the territorial or State treasurer for the tax levy for the preceding year and this settlement

must be a "full and complete settlement." It further pro-
vides that delinquencies on the part of any county in the
payment of the territorial or State levy shall bear interest at
the rate of 8 per cent. per annum after the 15th day of
January "when said levy was payable to the territorial treas-
urer;" and in case of any delinquency on the part of the
county, it is the duty of the territorial or State treasurer to
cause an action at law to be brought against such county
in the name of the territory (State) to recover the amount
of any such delinquency. This action was brought under
this clause of the section. As these sections 3836 and 3837
were originally enacted together, Ch. 103, Sess. Laws 1882,
the one fixing the liability of the county and the other pro-
viding for a full and complete annual settlement for the tax
levy of each year and fixing the liability of the county for
arrears in the tax levy of the year for which settlement is
made, they should be construed together. Thus construing
them, no allowance is to be made to any county for delin-
quent taxes or taxes uncollected, or for any part of the tax
levy for the year uncollected, except for double and erroneous
assessments certified at the time of the annual settlement,
and upon the failure to make this settlement, action may be
brought against the delinquent county. Its delinquency is
the delinquency of its treasurer and collector of taxes, and if
suit may be brought on such delinquency directly after this
annual settlement is made, I can not conceive how any other
credits may be allowed the county than those certified and
reported at this "full and complete" annual settlement of the
tax levy for the year. If a mistake is made in the matter of
credits as they existed at this time, undoubtedly they might
be corrected, but not as to subsequently discovered double and
erroneous assessments. By section 1698 of the Revised Stat-
utes, the county treasurer as a collector of the county revenue
must exhibit his vouchers and accounts to the territorial or
State auditor on or before the third Monday in December of
each year to be audited, adjusted and settled by the auditor,
who must, without delay, report the balance found due to the
treasurer. This auditing of the accounts of the county treas-

urer seems to me to be the basis on which the full and complete annual settlement is made with the territorial treasurer by the county treasurer on or before the first Monday in January following, as provided in section 3837. The petition shows that all proper credits were given by the auditor on the tax levy for each year, as certified for that year. Afterwards, double and erroneous assessments were certified for the tax levies of the years settled for and these were disallowed as not presented in time to the auditor and I think properly so. A full and complete settlement for the tax levy for a certain year precludes the idea of a settlement which may thereafter be re-opened and set aside.

I see the best of reasoning in support of my views. The exception like all provisos should be strictly construed. It is an unusual exception in statutes making the county responsible for the amount of the territorial or State levy made by the county board. The territorial board made the levy upon the returns sent up by the several county boards, and upon these returns was the amount estimated for the support of the territorial government. Each county is chargeable with this levy upon the property so returned, less only such double and erroneous assessments as are certified at the time of the full and complete annual assessment of the tax levy for the year. If this claim is for a rebate of territorial taxes after this settlement was made, I do not think that the State is chargeable with the loss. It is doubtful if the board of county commissioners can rebate territorial or State taxes which have been paid to the State, as it has no funds out of which it can refund the same to the tax payer, and it is absurd to say in effect that such moneys can be appropriated out of the State treasury by the county board.

The State has a right to secure its revenues and to provide against unreasonable or unanticipated loss and shrinkage therein, by fixing some date when the liability of the counties becomes absolute, and I think the statute so provides. It is impossible to devise any system of taxation that shall be perfect. Every safeguard seems to have been made by statute to protect the tax payer against fraud, impartiality and oppres-

sion and to secure as correct and complete an assessment roll as can be made by attentive and diligent county officers before the amount of the assessable taxation in the several counties is reported for the use of the territorial or State board for the purpose of making the State levies. Even after this assessment is made, and at the time of the annual full and complete settlement provided for any errors discovered in making double and erroneous assessments may be corrected and the county credited therefor. Subsequently discovered errors, to my mind, may not be corrected. This view of the statutes is no more unjust to the county than requiring it to be responsible for State taxes on the delinquent list which may never be collected. To hold otherwise, is to make the county board the final arbiter in determining the amount of taxes due to the State and to place the State revenues for that county under its control; in other words, to place the revenues of a sovereign State at the mercy of subordinate agents, in whose choice the State has had no voice and for whose acts or laches it can not be made responsible. All the credits claimed by Laramie county, as disclosed by the petition, were those made on tax levies that had been or should have been adjusted and settled at the proper statutory times, when such credits were not, under the statute, available.

It is true that this suit was not upon any settlement between the territorial and the county treasurer. If such a settlement had been made, there would have been no occasion for the suit. This action is based upon certain amounts of the tax levies for certain years unpaid when due by the county of Laramie through its county treasurer and ex officio collector of taxes. The county asked certain credits which were not interposed timely or at the statutory periods fixed for annual settlements, which it seems to me must, of necessity, be final and conclusive settlements up to those periods. I do not think it possible to imagine a case where a county treasurer "can give away the county revenue or bind the county to the payment of unjust or unauthorized charges in favor of the State." The law has erected too many safeguards to permit such an unusual and extraordinary generosity on the part

of any collector of the revenue. It is of no importance in this inquiry to ascertain whether or not the certificate of the auditor of the amount found due by him in his auditing the accounts and credits of any collector of the revenue is prima facie presumptive or conclusive evidence in a suit brought thereon. This action is not brought against the collector of taxes and his sureties, and the legality of any defense they might make in such action except upon the certificate of the auditor or his quietus as it has been termed, is not before us.

This action is instituted against the county in its corporate capacity for certain moneys that appear to me to be due on its tax levies for certain years to the State, and which were withheld as matters of credit, which I think were properly disallowed by the auditor. I have no doubt that in such a suit as this the action of the auditor in rejecting such credits may be reviewed, but I am of the opinion that his action in disallowing these credits was proper and warranted by the spirit and the letter of the law. This appears to be the first suit of the kind ever brought in this jurisdiction. For years, the view of the auditing department has been acquiesced in by other counties of the State. To allow such a defense as this will work a great hardship to the other counties of the State. It should not be allowed unless the statute plainly directs that it should be. State v. County of Kings, 125 N. Y., 312. In my view of the law, the credits preferred by Laramie county are plainly interdicted by the statutes bearing on the questions.

The demurrer to the petition of the State should have been, in my judgment, overruled.

---

ON RE-HEARING.

(October Term, 1893.)

CONAWAY, JUSTICE.

The principal point relied upon by plaintiff in error at the first hearing was that the annual settlement made by the county treasurer with the State auditor on the third Monday

in December of each year is final and conclusive as to the amount found due to the State treasurer by the auditor. This position is now ostensibly abandoned. It is contrary to all authority and to reason. The amount found by the auditor is prima facie correct. That is all.

But the abandonment of the original position by the able attorney for plaintiff in error is only apparent. The full and complete settlement of the county treasurer with the State treasurer on the first Monday in January following the settlement with the auditor, the allowance of interest on any delinquency on the part of the county after January 15th, and the duty of the State treasurer to cause an action to be brought against the delinquent county at once, is relied upon as fixing the amount of the liability of the county, finally and conclusively. (See Rev. Stat. Wyo., Sec. 3837.)

This is but another form of stating the proposition that the settlement with the auditor is final and conclusive. The settlement with the State treasurer is on the basis of the settlement with the auditor. The State treasurer has no power to audit any claim or to correct or change the amount of State taxes for which a county is liable, as settled by the auditor. The settlement by the county treasurer with the State treasurer is but an accounting by the county treasurer for the amount found due from the county to the State by the auditor. If the settlement with the State treasurer is final and conclusive it makes the settlement with the auditor final and conclusive to precisely the same extent. It is but the consummation of that settlement. If final and conclusive it practically annuls the provision of the statute giving an allowance or credit to counties on account of double or erroneous assessments. It is true, rare cases may arise of double and erroneous assessments discovered after the final meeting of the county board of equalization, commencing on the fourth Monday in July, and before the annual settlement with the State auditor on the third Monday in December. But such cases will be rare. Double and erroneous assessments discovered before the final adjournment of the board of equalization will be corrected there. The statute giving credits to

the counties on account of double or erroneous assessments practically affects only such assessments as are found to be double or erroneous after the final adjournment of the board of equalization, and after the resulting report of the amount of the assessment to the State board of equalization through the State auditor. If the statute is to be limited to cases of this nature discovered and certified by the third Monday in December of the same year, the purpose of the statute will in great measure be defeated. No case arising in the courts for the determination of the question of an alleged erroneous assessment is likely to be finally determined, if contested, before the third Monday in December of the current year. The entire scope of our tax laws is to secure the collection of the tax levy from the taxable property of the State, and to prevent the collection of any tax from property which is not taxable, and to prevent the collection of the same tax twice from the same property. Numerous provisions will be apparent to the careful reader especially adapted to effect these objects. When we ignore these beneficial purposes of the taxation laws we fall into error.

The learned counsel for plaintiff in error, in his brief on petition for re-hearing, submits the following, among other propositions:

"In the construction of a statute the purposes to be sub-"served and the evils to be overcome should be taken into "careful consideration, and, if possible, such a construction "should be given to the statute as will carry out its evident "purpose and intention, and will have the effect of overcom-"ing the evil, if any, which was intended to be averted. If "the statute is susceptible of the construction placed upon it "by the court in its opinion herein, it ceases to be a remedial "statute, and its purpose, if it had any, is entirely taken "away."

Again:

"It seems to us that the purpose of the statutory provisions "was to fix the time within which a county shall be entitled "to make its claim for credit to the State, such a time being

"so limited as to take away any possible chance of fraud upon "the State."

The statutory provisions referred to are those requiring annual settlements and payments of the State's revenue, allowing interest on any delinquency and requiring suit for its collection. We can not agree with counsel that the purpose of this statute is that of a statute of limitations. The evil to be remedied is that without such a statute authorizing it, no county would or could make any such settlement or payment. The evil to be remedied is that without such a statute, the State could not collect any taxes whatever from the counties. And yet the proposition is made and urged seriously that this statute in its object and purpose is but a statute of limitations. As a statute of limitations its period is absurdly short, being but a few weeks or months at most: and this is supposed "to take away any possible chance of fraud upon the State." As if it were easier to make a false certificate of double or erroneous assessments after the third Monday in December than before. Or rather as if it were impossible to make the false certificates before that time, but that they would be made afterwards if opportunity were given.

It has been seriously suggested that a number of counties are now delinquent to the State and, if not barred by this statute, false certificates of double and erroneous assessments will be furnished next December to meet such delinquency. This is the "loop-hole for fraud" spoken of by counsel. County officers disposed to make such false certificates need not make their doing so contingent upon the construction of this statute. They can make their false certificates of double and erroneous assessments as occurring in the current year as well as in former years. The penalty is no greater. The chance of detection substantially the same. It is a crime, partly at least, of record, and easily detected at any time. And the penitentiary is yawning for such officers, and makes no distinction between those who, either before or after the third Monday in December, make false declarations and certificates of double and erroneous assessments as occurring during the current year or in former years. To stop the supposed loop-

hole for fraud the statute must be repealed. But we can not indulge the presumption that county officers are seeking loopholes for fraud. Honesty is the rule; crime the exception. An argument that depends upon a presumption of fraud or crime is to be regarded with suspicion.

The learned counsel for plaintiff in error says in his brief on petition for re-hearing that "the statute is construed by the supreme court as if it had only provided that a county could obtain a credit for double and erroneous assessments without placing any limitation upon the time when such credit should be given to it." That is precisely what the statute in question has done without the aid of construction. The limitation, if there be any, must be found elsewhere. It can be found in this statute only by an unprecedented construction. The statute providing for the annual settlement and payment of taxes due the State and for enforcing the payment of delinquencies is not a statute of limitations as suggested. All states have such statutes. Diligent and extensive research by counsel and by members of this court has failed to bring to light a single case construing such a statute as a statute of limitations. Cases to the contrary are not wanting. And such statutes all require in effect a full and complete settlement. It would be strange indeed if a partial or incomplete settlement should suffice in any such case. The words "full and complete" add nothing to the effect of a statute requiring a general settlement.

The provision for suit against the county implies that a defense may be made. If the statute is a statute of limitations and bars one defense it bars all. If such is its effect there is no occasion for a suit. In that case the finding of the auditor has the conclusive effect of a judgment of a court of last resort, and the provision should be merely for a mandamus to the county commissioners to compel them to provide for, and pay the delinquency if they would not do so without mandamus. And clearly such mandamus would run without any statute expressly requiring it.

It is seriously urged that to give the county of Laramie in this instance an allowance or credit on account of confessed

double or erroneous assessments will work a hardship to other counties of the State, and that it should not be done unless the statute plainly directs it. The answer to this is that it does not work a hardship to other counties, and the statute does plainly direct it. The only hardship apparent is to the county where the double or erroneous assessment occurs. The county must rebate or refund to the tax payer not only its own share of the double or erroneous assessment but the entire assessment, including the share of the State, and, if there has been a sale of real property in making the collection of the tax, the county must pay interest and costs. The county is thus held responsible for the blunders of its own officers, as it has been contended it should be. The State gets all that it is entitled to, and the county alone suffers loss.

It is seriously urged that the levy of State taxes having been made on the basis of the entire amount of the assessments furnished by the different counties it will cause a derangement of the financial affairs of the State to reduce the revenue proposed to be raised by the State by giving an allowance or credit on account of double or erroneous assessments. This is an objection to the statute, and, if valid, should be considered by the Legislature. And the financial derangement, if perceptible at all, would be just as great if the allowance or credit were given on the third Monday in December as if it be given at a later date.

The learned attorney for plaintiff in error says in his brief: "It is not a question as to whether the State auditor has "properly credited the account of the collector of taxes or not, "or whether such auditing is conclusive, but the question is "whether or not by the operation of the statute itself, the "obligation of the county has not become fixed and limited "and cannot thereafter be changed." But this must mean fixed and limited according to the finding of the auditor. No other authority can fix or limit the amount of the obligation in the absence of a suit in a court of law. The settlement with the State treasurer is improperly brought into this discussion. Whenever the settlement with the State treasurer is held to

be final and conclusive it makes the settlement with the auditor upon which it is founded final and conclusive. It is doubtful if even fraud could be pleaded as a defense after a statute of limitations has run against every defense. If it may be pleaded at all, fraud is difficult to prove. And for any mistake, inadvertence, or wilful negligence of the county treasurer, resulting in failure to properly represent the interests of the county in the settlement with the auditor as well as for a failure of the board of equalization to detect double and erroneous assessments, there would be positively no remedy. It is a mistake to consider a credit to a county on account of double or erroneous assessments as a matter requiring additional legislative action. It is a matter already provided for by the statute. It is a mistake to regard double or erroneous assessments as part of the State's revenue. They are illegal exactions, and must be credited to the county from which they have been exacted, under existing statutes.

The contention of plaintiff in error seems to be without merit. The petition for re-hearing is dismissed.

CLARK, J., concurs.

GROESBECK, C. J., dissenting.

I see no reason for changing or modifying the views expressed in my dissenting opinion upon the original hearing (33 Pac., 993), and an examination of the authorities submitted since that time confirms me in my conclusion. Our revenue laws provide for a full and complete annual settlement of the tax levy each year between the territorial or State auditing department and the county treasurer as tax collector, and I think this prevents the reopening of any such "full and complete" settlement so made. Any other view would lead to confusion and delay in securing the revenues of the State. In the case at bar, such a full and complete settlement appears to have been made prior to 1888, and in the settlement of the tax levy of that year credits were claimed by Laramie county for double or erroneous assessments in prior years, and in the settlement for the year 1889, credits were claimed for double or erroneous assessments for the year 1888. The territorial

auditor disallowed these credits and suit was brought for the amount withheld. I think this action of the auditor was correct as the credits were not preferred within the time fixed by statute for the annual settlements. No other rule, it seems to me, can with safety be laid down in order to secure to the State promptness and certainty in the collection of its revenues.

The county is made responsible for its quota of the territorial tax, with the sole exception of such amounts as are certified to be double or erroneous assessments, and no allowance or credit can be given to any county for any part other than this of such tax levy remaining uncollected. Sec. 3836 Rev. St. This clearly refers to a credit upon the tax levy of the year and does not mean a collection of credits upon the tax levies of a number of years. If there is any doubt upon this proposition it is explained by the following section of the revision enacted at the same time with its preceding section, providing for a full and complete annual settlement of the tax levy of the preceding year and providing for the prompt institution of a suit for the delinquency of the county, which is that of its collector of taxes. The territory had, and the State now has, a summary remedy against the collector and his sureties in case of a default in the amount found due by the auditor, if it be not paid within ten days after such finding. The auditor is directed to issue his warrant for such delinquency against the collector and his sureties to be made by the distress and sale of the chattels and real estate of the delinquent collector, and if his property be not sufficient to satisfy the amount of the warrant, then distress and sale of the property of his sureties may be made under the warrant. Sections 1698-1701, Rev. St., Wyo.

These summary remedies are held to be constitutional. Cooley on Taxation, p. 721. Casby v. Thompson, 42 Mo., 133. In a suit against a collector of taxes and his sureties where the collector is allowed credits for taxes not collected, when he shows that he has exhausted all legal means for their collection, it was held that such credits or deduction lists must be preferred and filed within the statutory time allowed

therefor, or they will not be available for a defense, and under the same statute that the auditor has no authority to extend the time for the settlement, and further if a tax collector is equitably entitled to relief under such a rigid statute, the Legislature alone can grant it. State v. Lanier, 31 La. Ann. 423; State v. Guilbeau, 37 La. Ann., 718; State v. Viator et al., Id., 734. The reason for this strict rule is that revenue laws are sui generis and are not to be assimilated to those on any other subject.

I do not see why the same rule should not prevail in a suit against a county for a delinquency of the collector in non-payment of any portion of the State taxes. Indeed, the Louisiana cases, supra, all seem to be cases where suits have been brought and the collector has been unable to make the same defense or introduce evidence upon it, as is claimed in the suit at bar. The remedy against the county ought to be as effective as a suit against her officer, and I think the legislature has so made it. It was well said in the case of Commonwealth v. Luzerne County (Penn.), 15 Atlantic, 550, in the language of the nisi prius court, adopted by the supreme court: "Some effect must be given to the official action of "the accounting departments, and it matters little whether "that action be called judicial or administrative or ministerial. "At all events these departments form a tribunal of some sort "to which has been given the power of settling certain accounts "with the counties; and when they exercise the power of "settlement upon one of these accounts within their jurisdic-"tion, the result of their action cannot collaterally attacked." A number of Pennsylvania cases are cited in support of this statement, and a careful review of them will show that the action of the auditing or accounting department has been sustained and held to be final and conclusive, where no appeal is taken, an appeal lying in such cases by force of the statute of that State to the courts. Our statute does not allow such an appeal, and of course then the action of the auditing department would be final and no relief could be obtained except through the legislature. State v. Viator, 37 La. Ann., 735, supra. This is a provision of our statute: "If any per-

"son interested shall be dissatisfied with the decision of the "auditor on any claim* account or credit, the auditor shall at "the request of such person, certify his decision, with his "reasons therefor, specifying the items rejected, if less than "the whole, under the seal of his office, and refer the same "to the legislative assembly." Sec. 1710, Rev. Stat. Wyo. Here is an express provision for bringing a claim or a "credit" to the notice of the legislature through an official channel. This method of procedure has been well understood in the past, and there are two statutes bearing on the question, one approved Dec. 16, 1871 (Comp. Laws 1876, p. 516), authorizing the territorial auditor to settle with the treasurer of Carbon County, in the matter of paying over territorial taxes collected for the year 1870, upon the basis presented by said county treasurer and approved by the board of county commissioners of his county, and this law was passed under a statute nearly the same as that under consideration (Sec. 3836, Rev. Stat.), and the other statute (Ch. 70, Sess. Laws 1884) appropriates moneys out of the territorial treasury in full payment to the treasurer of Johnson County for moneys paid into the territorial treasury on the general assessment of 1883, "by reason of a correction in the assessment subsequent to the sending of the valuation to the territorial auditor," and this act was passed when the statute was the same as now embodied in Section 3836 of the revision.

I do not say in a suit against a county that the defense might not be interposed that the auditor refused to allow a proper credit claimed at the proper time by the county as a double or erroneous assessment in the settlement of the tax levy of the year when such double or erroneous assessment was made. It seems to me that such defense could be set up, but certainly not one involving the resurrection of stale credits and those arising upon tax levies of preceding years. My construction of the statute I do not think is "unprecedented;" on the contrary, it is based upon the letter and the spirit of the statute and is in harmony with our entire system of taxation. I think I am supported by the Pennsylvania cases cited in Com. v. Luzerne Co., supra, and in the recent cases of Com.

v. Philadelphia Co., 27 Atlantic, 546, and Com. v. Philadelphia City and County, Id., 551, and the Louisiana cases, supra. I find nothing in the citation from Cooley on Taxation, p. 718, that is contrary to these views; indeed, it appears to me that all the authorities support me in my views.

Nor do I regard the limitations in the statutes as to the time when the full and complete annual settlement of the tax levy of the year shall be made as having the force of a statute of limitations against the county. There was no provision of law permitting the State to be sued, in the territorial statutes, and although the constitution (Art. 1, Sec. 8) provides that "suits may be brought against the State in such manner and at such times as the legislature may by law direct," yet no law has yet been enacted for that purpose. The supreme court of Louisiana held in State v. Guilbeau, supra, that the tax collector of a county could not plead compensation when sued for taxes collected by or chargeable to him, as this would practically allow him to sue the State, and it was said that the proper place to settle the matter was at the auditor's office. Treasurer v. Cleary, 3 Richardson (S. C.), 372; Treasurers v. Hilliard, 8 Id., 412. Our revenue system makes each county the principal debtor and liable for the territorial or State tax apportioned to it. The State does not deal with individual taxpayers or assume any responsibility for the collection of the tax, but it deals directly with the county. The primary liability is with the counties, and the State looks to them alone for its revenues. State v. Baker Co. (Ore.), 33 Pac., 530; State v. Multnomah Co., 13 Ore., 287; New York v. Davenport, 92 N. Y., 604. In addition to this liability of the county, the statutes hold the collector of taxes and his sureties liable for the amount of State revenues as adjusted and settled by the auditor. This of necessity determines the liability of the county, as its default or delinquency can only be measured by the default or delinquency of its tax collector. Our territorial method of taxation is almost identical with the State system, as the laws have practically undergone no change by the transition from the territorial to the State condition. To support the territorial

government a certain rate per centum of taxation was fixed by the territorial board of equalization upon the aggregate property returned by the county authorities and by original assessment made by the territorial board of telegraph and railway lines. This fixed rate was transmitted to the county officials and was levied by the county boards. I do not see that this makes any difference in ascertaining the liability of the counties and their tax collectors. It requires but a mere mathematical computation in the auditor's office to determine the amount to be charged against the counties, by multiplying the aggregate property of the county by the rate per cent of territorial taxation, and this is as direct a charge of the State of territorial tax as if a certain amount of territorial tax had been directly apportioned to the counties. Ordinarily, if double or erroneous assessments have been made by the county boards, the county making the error ought to suffer, as the fault or mistake is that of county authorities. Our statute allows a credit for double or erroneous assessments if timely interposed, and with ordinary diligence these double or erroneous assessments can be ascertained before the time of the annual settlement with the auditor. In Michigan, where the county authorities collect the State taxes and forward them to the proper State authority with a list of delinquent taxes for the State authorities to collect, the county is held to be a guarantor for the regularity and legality of the taxes, and in case any tax is set aside by proper State authority in the manner pointed out by law, so that the State does not receive its amount, then it is charged back to the county as so much previously credited without consideration, and the county is bound to make it good. Aud. Gen. v. Supervisors of Monroe, 36 Mich., 73. So in all systems, the State looks to the county either for the full amount of the revenue apportioned to it, or as responsible for the amounts remaining uncollected, as the county is charged with the duty of making legal assessments and legal levies.

The exception and allowance of a credit for double or erroneous assessments should be construed so that it shall be preferred at the proper time and as excluding stale claims,

in order that the estimates for State revenues may be correctly made and the State deprived of no portion of its revenues. The rule adopted by the auditing department excluding credits for double or erroneous assessments not preferred in the settlement for the year in which they were made, I think is a wholesome one, based upon the letter of the statute and in harmony with the revenue laws. It has been acquiesced in for many years, and I can be no party to formulating a new rule that it seems to me will result in great confusion, impair the promptness of the collection of the revenues and offer a premium to official sloth and negligence. No amount of sophistry will convince me that the State has lost of its revenues some eight thousand dollars by the decision of this court. This amount has been or must be borne by the people generally instead of that district where the mistake was made. This is unjust and inequitable. I trust that my brethren are correct and that these instances will be "rare," but I fear it will lead to the resurrection of stale claims and inject in each annual tax settlement matters not properly connected with it, and this against the plain provisions of the law.

The motion for rehearing should have been granted.