Argued 22 July; decided 11 August, 1902.

## POPPLETON v. JONES.

[69 Pac. 919.]

LIABILITY OF SURVIVING PARTNER FOR PARTNERSHIP DEBTS.

1. The provisions of the Oregon statute providing that the executor or administrator of the estate of a deceased person, who was a member of a firm, shall include in the inventory of the decedent's estate, in a separate schedule, the property of such firm and shall administer the same, unless the surviving partner applies for the administration thereof and qualifies for that purpose (Hill's Ann. Laws, §§ 1101, 1102, 1103, 1105), does not affect the common-law right of a creditor of a firm to sue and recover of the surviving partner without attempting to collect from the estate of the deceased.

CONTRACT TO PAY IN CHATTELS—DAMAGES—INTEREST.

2. A contract to pay a given sum in a certain kind of property, as, for example, in building material, within a specified time, is an agreement to pay in the kind of property designated, and not to pay in money at all, so that, on default in performance, the claim of the injured party is for damages and

not for debt, and consequently no interest can be recovered, for Section 3587 of Hill's Ann. Laws, regulating interest, provides only for interest on money after it has become due.

From Yamhill: GEORGE H. BURNETT, Judge.

This is an action by Edgar Poppleton against George W. Jones and F. G. Adams to recover money. It is alleged in the complaint that on March 31, 1890, the defendants, George W. Jones and F. G. Adams, and one James Flett, were partners engaged in business as Jones & Co.; that on said day plaintiff, at their request, sold and assigned to them all his interest in a contract for the purchase of certain real property, for which they agreed to deliver to him, on or before two years therefrom, building material of the value of $800; that between April 30, 1891, and August 9, 1894, he received from them material of the value of $223.63, and upon demand for the remainder they refused to deliver any more, and also neglected to pay the sum due on account thereof. The demand is for the recovery of the sum of $800, with interest from March 31, 1892, less the price of the material so received; the date of delivery, the quantity, and the value of which is stated. The defendants, Jones and Adams, filed a plea in abatement, alleging that prior to the commencement of the action Flett died intestate in Yamhill County, Oregon, being an inhabitant thereof; that upon application therefor the county court of said county appointed an administrator of said partnership estate, who, having duly qualified, is in possession of the firm assets of Jones & Co.; that said estate is solvent, and the administrator thereof has in his hands sufficient money with which to pay all its debts; and that plaintiff's claim has never been presented to said administrator. A demurrer to the plea on the ground that it did not state facts sufficient to constitute a defense having been sustained, and the defendants declining to plead further, judgment was rendered against them for the sum claimed, without interest, and they appeal. Plaintiff also appeals, assigning as error the action of the court in refusing to allow interest.                    AFFIRMED.

For appellants there was a brief over the names of *W. T. Vinton* and *Hewitt & Sox,* with an oral argument by *Mr. Vinton* and *Mr. Henry H. Hewitt.*

For respondent there was a brief and an oral argument by *Mr. William A. Cleland.*

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is contended by defendants' counsel that, the complaint having alleged that Jones, Adams, and Flett were partners when the contract relied upon was entered into, the obligation thus created is joint, and Flett's death did not sever it; that, though at common law the engagements of partners were joint, the death of one of the members dissolved the firm, whereupon an action at law was maintainable thereon against the survivors; that the reason for such rule is founded upon the fact that by the ancient law the survivors possessed the right to continue in possession of the firm's effects with power to collect the debts, to wind up its affairs, and to settle its obligations; but that the statute of this state having taken from the surviving partners such right, thereby relieved them from the several liability which is an incident to the exercise of such right, and that the court erred in sustaining the demurrer to the plea in abatement and in rendering the judgment complained of. The statute adverted to provides, in effect, that the executor or administrator of a deceased person who was a member of a partnership shall include in the inventory of the decedent's estate, in a separate schedule, the property of such partnership, and cause the value thereof to be estimated by the appraisers (Hill Ann. Laws, § 1101), whereupon he shall have the custody and control of such property for the purpose of discharging his trust, unless the surviving partner, within five days from the filing of such inventory, applies for the administration thereof (Hill's Ann. Laws, § 1102). If he petitions therefor, and is competent and qualified, he is entitled to be appointed, and, when commissioned, is denominated the administrator of the partnership, with the

same powers and subject to the same liabilities and duties that are incident to and devolve upon a general administrator (Hill's Ann. Laws, § 1103); but if he is not appointed administrator of the partnership the administration thereof devolves upon the executor or general administrator, who is required to give an additional undertaking in double the value of the property (Hill's Ann. Laws, § 1105). The question presented on this appeal is whether the statute conferring upon the county court jurisdiction of partnership estates upon the death of one of the members has so changed the rules of the common law as to prevent a creditor of a firm from maintaining an action at law against the survivors on their joint obligation.

By the old law, when a person died intestate in England, the king, as *parens patriae*, seized his goods, and held them as general trustee of the kingdom. This prerogative he exercised at first through his ministers of justice, but afterwards (probably to aid the church) he conferred it upon the prelates, who, as his almoners, seized the goods of intestates, sold them, and distributed the money in charity, or in *pios usus*. Thus the ecclesiastical courts early secured jurisdiction of most probate matters: 2 Bl. Com. 494. "But the origin of our probate system, referable to the English spiritual courts," says Mr. Woerner in his work on American Law of Administration (2 ed. *341), "is still recognizable in the decisions of some states as to their mode of procedure, although the rules of the civil and common law, which governed the ecclesiastical courts, are necessarily greatly modified in the adaptation to the widely different circumstances and spirit of the American people." The court of equity, however, executing the *quasi* trust existing between partners in consequence of their fiduciary relations (Pomeroy, Eq. Jur. 2 ed. § 1088), took jurisdiction of all dealings between them, as an incident to accounts (3 Bl. Com. *437). Though the death of a partner dissolved the partnership (*Powell* v. *North,* 3 Ind. 392, 56 Am. Dec. 513), the surviving partner, however, retained exclusive possession of the firm's assets, in trust for the payment

of the firm's debts, and for the benefit of the heirs and distributees of the decedent: *Easton* v. *Courtwright,* 84 Mo. 27. In the discharge of the duty thus imposed upon him he was subject only to the supervisory jurisdiction of a court of equity: *Case* v. *Abeel,* 1 Paige, 398; *Washburn* v. *Goodman,* 17 Pick. 519; *Russell* v. *McCall,* 141 N. Y. 437 (36 N. E. 498, 38 Am. St. Rep. 807); *Darrows* v. *Calkins,* 154 N. Y. 503 (49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637). Trust property is generally limited to trustees as joint tenants, in which case, upon the death of one of them, the whole estate, whether real or personal, devolves upon the survivor, because of the inconvenience of trustees holding as tenants in common: 1 Perry, Trusts (5 ed.), § 343. The relation of a partner to the other members of the firm being only that of a *quasi* trustee, there is not the same supervisorship as in joint tenancy, but there is a survivorship peculiar to partnership: Parsons, Partn. (3 ed.), \*440. All partnership contracts when made, and during the lifetime of the partners, are to be considered as joint, thereby rendering each member of the firm liable to third parties for all the partnership debts: 15 Enc. Pl. & Pr. 854; 17 Am. & Eng. Enc. Law (1 ed.), 1062. But the death of one of the partners extinguishes the joint obligation as to him (*McLain* v. *Carson's Ex'r,* 4 Ark. 164, 37 Am. Dec. 777), "and," as was said by Mr. Justice THOMPSON in *Hargadine* v. *Gibbons,* 45 Mo. App. 461, "the creditors of the firm simply had one debtor less."

In *Grant* v. *Shurter,* 1 Wend. 150, Mr. Justice WOODWORTH, discussing this subject, says: "In the case of a joint contract, if one of the parties die, his executor is at law discharged from liability, and the survivor alone can be sued; and if the executor be sued he may plead the survivorship, or give it in evidence under the general issue; but if the contract be several, or joint and several, the executor of the deceased may be sued at law in a separate action." Though the creditor of a partnership at common law might proceed in equity against the estate of a deceased partner, he had no remedy at law against his representative for the recovery of such joint debt:

*Burnside* v. *Merrick,* 4 Metc. 537. "At common law the death of one of two joint contractors," says Mr. Chief Justice BIGE-LOW in *Re Rice,* 7 Allen, 112, "severs the promise, and renders the survivor liable thereon as on his several promise. In such case the survivor only can be sued on the contract, and the executor or administrator of the deceased party, if sued, may plead the survivorship in bar, or give it in evidence on a trial of the merits." "The decease of one partner," says Mr. Justice CHAPMAN, in *Forward* v. *Forward,* 6 Allen, 494, "dissolves the partnership, and its debts become the sole debts of the surviving partner. He should pay them, and settle his account in probate court." In *Lane* v. *Doty,* 4 Barb. 534, Mr. Justice PAIGE, discussing this question, says: "In case of a joint contract, if one of the parties dies, his executor or administrator is at law discharged from liability, and the survivor alone can be sued." In *Richter* v. *Poppenhausen,* 42 N. Y. 373, it was held that in case of the death of one of the partners a creditor of the firm must, in the first instance, exhaust his remedy against the survivor, and, if he failed by this means to collect his debt, he might resort to a suit in equity against the representative of the deceased partner. In *Sherman* v. *Kreul,* 42 Wis. 33, it was held that when one of the partners dies the legal remedy on a joint obligation is against the survivors only, and that the estate of the deceased is discharged at law, though his administrator may be proceeded against in equity upon showing that the remedy against the survivors has been exhausted, or that they are insolvent. To the same effect, see *Voorhis* v. *Childs' Ex'r,* 17 N. Y. 354; *Pope* v. *Cole,* 55 N. Y. 124 (14 Am. Rep. 198). The more modern doctrine, however, seems to be that, though the obligation of a partnership is regarded at law as joint, it is nevertheless treated in equity as joint and several, thereby rendering the estate of a deceased partner liable for the firm's debts. In states in which this rule prevails the creditor may, at his option, either pursue his legal remedy against the survivors, or resort in equity to the estate of the deceased partner, irrespective of the condition of the accounts between

them, and regardless of the ability of the survivors to pay the firm debts: Story, Partn. § 362; Lindley, Partn. § 1053.

The right of a creditor to elect the forum and to designate the parties against whom he institutes an action at law or brings a suit in equity to recover on the obligation of a firm, after the death of a member, is not necessarily involved herein, and is treated only by way of argument, to illustrate the principle that the death of a partner *eo instanti* releases his estate from all liability at law upon the joint debt. Though the possession of the assets of a firm once afforded a valid reason for preventing a creditor from resorting to a suit in equity against the representative of a deceased partner (*Pearson v. Keedy,* 6 B. Mon.128, 43 Am. Dec. 160), it would nevertheless seem, upon principle, that an action at law could be maintained by a creditor against such partners, not because they can exercise the right to continue in possession of the firm's assets, if there be any, but because, the death of the partner having freed his estate from liability at law, the survivors are nevertheless liable upon their obligation. In *Brigham Hopkins Co. v. Gross,* 20 Wash. 218 (54 Pac. 1127), the Supreme Court of Washington reached a different conclusion. Mr. Chief Justice SCOTT, rendering the decision, says: "The principle upon which the survivors were allowed to be sued at common law was that, upon the death of one member of the firm, they succeeded to the entire partnership property as a matter of right, and might proceed with the due settlement of the partnership estate practically unrestricted. We have no statute making such contracts several, and, as the unqualified right to administer upon the partnership estate has been taken from the survivor, it would seem as though, in the absence of legislation authorizing it, the reason for sustaining the action against him, unless the partnership estate is insolvent, no longer exists." No case is cited in support of this conclusion, and as, at common law, the joint obligation of partners upon the death of one of them rendered the survivors liable in an action at law thereon, no statute declaring such effect was necessary, in the absence of which the ancient

rule still prevails, and hence we cannot adopt the reason advanced nor follow the decision relied upon by defendant's counsel. In *Harrington* v. *Herrick*, 64 Fed. 468 (12 C. C. A. 231), it was held, in construing the statute involved in the case of *Brigham Hopkins Co.* v. *Gross*, 20 Wash. 218 (54 Pac. 1127), that where one partner dies, and his administrator administers upon the firm's estate because of the failure of the survivor to apply therefor, such administrator is not a necessary party to an action against the survivor on a note given by the firm. McKENNA, J., in deciding the case, says: ''The Washington statute does not take away the right a surviving partner has of administering the assets of the firm, but only guards it in the interests of representatives of the deceased partner, by requiring a bond, and substitutes the supervision of the probate court for a court of equity. The obligations of the surviving partner are not released, and the remedies of the creditors are not changed.'' In *Brigham Hopkins Co.* v. *Gross* (C. C.), 107 Fed. 769, it was held that under the statute of Washington an action may be maintained against a surviving member of a partnership to collect a firm debt without joining as a defendant the administrator of the deceased partner, and without pleading any excuse for the nonjoinder. No error having been committed in rendering judgment against the surviving partner for the principal due, the action of the court in this respect will not be disturbed.

2. This brings us to a consideration of the cross appeal. Plaintiff's counsel contend that the court erred in refusing to allow their client interest on the debt after it matured. It is argued that, notwithstanding the agreement was to pay in building material on or before two years from March 31, 1890, after the expiration of that period the debt was payable in money, and, this being so, it bore interest at the legal rate. The statute in force when the contract was entered into provided that the rate of interest in this state should be 8 per centum per annum, and no more, on all moneys after the same become due: Hill's Ann. Laws, § 3587. The allegation of the complaint in respect to the time and manner of paying the consideration for the

assignment of the contract of purchase is as follows: "That on the 31st day of March, 1890, at McMinnville, in the State of Oregon, plaintiff, at the special instance and request of defendants, sold and delivered to said defendants, for the agreed price of eight hundred dollars ($800.00), to be paid on or before two years from said date in building materials," etc.  It will be observed that neither the character, quality, nor value of the building material to be delivered is stated in the complaint.  In *Cole* v. *Ross*, 9 B. Mon. 393 (1 Am. Rep. 517), it was held that an agreement to pay $3,333.33, "payable in good merchantable pig metal, delivered on the bank in Greenupsburg, at twenty-nine dollars per ton," was an imperative obligation to pay in pig metal.  Mr. Justice SIMPSON, speaking for the court, in deciding the case, says: "The expression 'payable in good merchantable pig metal' clearly points out the thing which is to be paid.  It is not of the same import as the expression 'may be paid in pig metal.'  The latter, if used, would have implied an election to pay in the thing named or not, as it might suit the convenience of the obligors.  The former, in direct and positive language, makes the amount payable in the thing specified, and shows that it was really a contract for pig metal, and not for money, which might be paid by the delivery of the article named; and that the sum mentioned was merely the medium by which the quantity of the thing contracted for was to be ascertained, according to its stipulated value per ton."

In *Mattox* v. *Craig*, 2 Bibb, 584, it was held that an action of debt would not lie to recover upon a note for the payment of "eighty-nine dollars, to be discharged in good merchantable brick, common brick at four dollars per thousand, and sand brick at five dollars per thousand, to be delivered at the house of said Craig, in the town of Shelbyville, on or before the first day of August next."  In deciding the case Mr. Justice BOYLE says: "It is a settled doctrine of the common law that debt will not lie upon a contract for the delivery of property, or the performance of any other duty, except the payment of money.  This doctrine has been recognized by the de-

cisions of this court in the cases of *Watson* v. *McNairy,* 1 Bibb, 356; *Bruner* v. *Kelsoe,* 1 Bibb, 487. In principle we can perceive no difference between these cases and the one before the court. In either case the sum mentioned is not the thing to be paid, but merely the medium by which the value or quantity of the thing contracted to be paid is to be acsertained. The expression 'to be discharged in good merchantable brick,' etc., cannot be construed, as was contended in argument, to give an election to the debtor to pay in bricks or not, as might suit his convenience, but plainly imports an imperative obligation." In *Johnson* v. *Dooley,* 65 Ark. 71 (44 S. W. 1032, 40 L. R. A. 74), it was held, in construing a clause in a note, "payable in levee bonds of the State of Arkansas at par, and at Little Rock, in said state," that the word "payable," when so used in commercial transactions, means "to be paid," rather than "which may be paid," and that a note payable in the manner indicated does not become payable in money on the failure of the maker to pay or tender the bonds on the day the note is due, since it does not give him the mere privilege or option to pay in bonds, but makes a positive and absolute promise to pay in the specific funds named. In *State* v. *Multnomah County,* 13 Or. 287 (10 Pac. 635), it was held, in effect, that the right to recover interest depended upon the statute conferring it. Mr. Justice THAYER, speaking for the court in that case, and referring to Hill's Ann. Laws, § 3587, says: "This statute was intended, doubtless, to cover every case of the allowance of interest." The editors of the American & English Encyclopedia of Law (volume 16, 2 ed., 1024), in speaking of the general rule in respect to contracts other than to pay money, say: "Where the action is for damages for the breach of a contract to do some thing other than to pay money, the rule against the recovery of interest on unliquidated damages has been generally applicable." The failure of the defendants to deliver the building material agreed upon resulted in damages to the plaintiff, to recover which he instituted this action, but, as our statute only provides for the payment of interest upon "money" after it becomes due, the

42 OR.—3

damages sought to be recovered were not liquidated so as to become "money" till the judgment was rendered, and hence no error was committed in refusing to allow interest. It follows from these considerations that the judgment is affirmed.

AFFIRMED.

Decided 12 January; rehearing denied 1 May, 1903.