### NORTH PACIFIC LUM. CO. *v.* SPORE.

[75 Pac. 890.]

Trial—Taking Case From Jury.

1. If there is any evidence reasonably tending to support the material allegations of a complaint, the case should be submitted to the jury and a motion for an involuntary nonsuit denied.

Partnership—Agreement of Parties.

2. The relation of partnership is a peculiarly confidential one, and ordinarily is entered into only by the clear assent of all the members, but it is not always necessary to have that assent shown by testimony, for sometimes ignorant or unaccomplished witnesses may fail to state in words what satisfactorily appears from surrounding circumstances.

Relation of Partnership as to Third Persons.

3. Where it appears that not all the members of an alleged partnership were held out to plaintiff as partners, the liability of those not mentioned rests upon the intention of all the alleged partners to enter into that relationship.

Transference of Government Contract—Partnership.

4. Under Rev. Stat. U. S. § 3737 (U. S. Comp. St. 1901, p. 2507), providing that no public contract shall be transferred by the party to whom the contract is given to any other party, and that such transfer shall cause an annulment of the contract, so far as the United States is concerned, the formation of a partnership by persons holding a government contract for the erection of public buildings with other persons does not necessarily effect an annulment of the contract.

Admissibility of Evidence.

5. Checks, letters, and other written evidence, shown to relate to the disputed points, may usually be received as evidence in connection with and as explanatory of the oral testimony.

Estoppel to Deny Partnership—Changing Position.

6. Persons who voluntarily lead others to believe their statements, and to act on such statements to their prejudice, are estopped to afterward deny their truth. For instance: Where a principal contractor used language to a subcontractor which led and was intended to lead him to believe that he was to share as a partner in the contract, and he did so believe, and acted thereon, the principal contractor is bound by the agreement, whether he intended finally to be bound by it or not.

Joint Liability of Partners.

7. The liability of partners for firm debts is joint, and such a judgment should be entered when that relationship is established. What separate judgments may be entered is not considered here.

From Multnomah : Arthur L. Frazer, Judge.

This is an action by the North Pacific Lumber Company to recover from Spore & Robinson and Hansen & Landon the value of certain building material. It is alleged in the complaint, in effect, that, at all the times mentioned therein, plaintiff was a corporation; that the defendants, Cornelius L. Spore, Henry O. Robinson, Andrew M. Hansen, and Herman D. Landon, formed partnerships as Spore & Robinson and Hansen & Landon, respectively, and were also partners and jointly interested in the purchase and use of building material; that between August 12, 1901, and August 1, 1902, plaintiff sold and delivered to them, at their request, timber and lumber of the agreed value of $5,982.49, which sum they promised to discharge, but had paid thereon only $4,400, leaving due $1,582.49, for which judgment was demanded. The defendants Hansen & Landon made no appearance, but Spore & Robinson filed an answer in the nature of a plea in abatement, in which it was stated that they never were partners with Hansen & Landon, or jointly interested with them in the transaction of any business. The reply denied the allegations of new matter in the answer, and a trial being had, resulted in a verdict for plaintiff, upon which a judgment was rendered to the effect that Spore & Robinson, in the purchase and use of the material in question, were partners with Hansen & Landon. Spore & Robinson having refused further to plead or answer, judgment was rendered against them only, in their firm name and individually, for the sum demanded, and they appeal.

REVERSED.

For appellants there was a brief and an oral argument by *Mr. Austin F. Flegel* and *Mr. William T. Muir*.

For respondent there was a brief and an oral argument by *Mr. Thos. N. Strong*.

Mr. Chief Justice Moore, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. It is contended by appellants' counsel that no testimony was given at the trial tending to prove the existence of a partnership between Spore & Robinson and Hansen & Landon, and, this being so, the court erred in denying their motion for a judgment of nonsuit. A motion for an involuntary judgment of nonsuit admits, as a matter of law, the truth of all the testimony given upon a material issue of the complaint, and also every fair and legitimate inference of fact deducible therefrom, but denies that a consideration thereof authorizes the jury to find a verdict for the plaintiff: *Brown* v. *Oregon Lum. Co.* 24 Or. 315 (33 Pac. 557). In *Perkins* v. *McCullough*, 36 Or. 146 (59 Pac. 182), it is said : "The rule is well settled in this State that if there be any evidence, however slight, fairly susceptible of an inference or presumption tending to establish a material allegation of the complaint, it is the duty of the court to deny the motion for a judgment of nonsuit, and submit the question involved to the jury for determination."

The testimony shows that the defendants Spore & Robinson entered into a contract with the United States, agreeing, in consideration of $92,789.40, to furnish the material and erect at Fort Columbia, Washington, certain buildings, for which they were monthly to receive 80 per cent of the estimated value of the work as it progressed, and the remainder when the structures were completed. On July 12, 1901, the defendants Hansen & Landon entered into a contract with Spore & Robinson, whereby they agreed to furnish the material and erect the buildings for $10,000 less than the original price. Spore & Robinson were to receive the money as it was paid, discharge all bills incurred on account of the work, retain such a percentage of $10,000 as the monthly payments bore to the contract price, and pay the remainder to Hansen & Landon. The work under the contract was begun July 13, 1901, by Han-

sen & Landon, who employed Robinson as superintendent. They also ordered from plaintiff a quantity of lumber and timber, which was shipped to Fort Columbia and used in erecting the buildings, the account therefor being charged to them. After expending their own money in carrying out the agreement, Hansen & Landon found it difficult to continue the work without more means, to secure which they borrowed from the London & San Francisco Bank of Portland, Oregon, $10,000, giving their promissory note therefor, which was also signed by Spore & Robinson and by F. E. Beach. As collateral security, Hansen & Landon assigned to the bank promissory notes for the sum of $6,000, secured by a mortgage, and the money borrowed was placed to the credit of Spore & Robinson, who, in paying for material used and labor employed in the construction of the buildings, drew checks, which were countersigned by Hansen & Landon. As the monthly payments were made, Spore & Robinson, without appropriating any part thereof, deposited the money in that bank and drew it out in the manner indicated, but near the completion of the work, having received a payment of about $22,000, they refused to deposit it in the London & San Francisco Bank, left the $10,000 note and an overdraft of about $60 unpaid, and declined to pay plaintiff's bill and other expenses incurred in the construction of the building, amounting to about $5,500, though they promised to pay these claims if Hansen & Landon would procure for them a statement thereof, which they furnished.

The defendant Herman Landon, as plaintiff's witness, testified that about October 1, 1901, Captain Goodale, the quartermaster in charge of construction at Fort Columbia, notified him that the original contract could not be sublet, which information he communicated to Spore & Robinson, whereupon it was understood that he and his partner

should assist in putting up the buildings, and Spore & Robinson would make it right with them; that they continued operations until July, 1902, when, having learned that their contract was invalid, because prohibited by the United States statute, they notified Spore & Robinson that they would quit work unless some definite arrangement were made, whereupon Robinson told them that, if they would continue the construction of the building, the profits would be divided, and they proceeded with the work. The witness, referring to the statement that Spore & Robinson would make it right with them, was asked: " Who were you talking with in this conversation?" and replied: "Spore & Robinson—Mr. Robinson principally." He also says that the agreement was that the two firms should jointly go ahead with the work, and there should be a fair division of the profits. On cross-examination he was asked: " Who had actual charge of the job?" and answered: " It was practically all four men—three men. Mr. Spore was on the ground. We consulted each other; talked matters over. We went mutually right along up to the final annulling of the contract in July." Landon's attention having been called to the objections made by Captain Goodale, he was asked: " Speaking of these former times when the government would not recognize your contract, what conversation, if any, did you have with Spore & Robinson then?" and replied: " We informed them of the fact, and told them we were working under difficulties, and we wished to be released. Q. What did they say? A. To proceed with the work, and they would do what was right about the matter; they could not expect us to proceed under such circumstances under the contract. Q. When was this? A. At several different times during the progress of the work, prior to July 5, 1902." On cross-examination, Landon, having testified that the contract with Spore & Robinson was revoked in July, 1902, was asked: " It was

annulled before that time?" and answered : " It was a kind of mutual understanding we were to go ahead with the job, then we would not be bound by the contract. * * Q. Do you mean to say the contract was annulled before that time ? A. Yes, sir ; we expected we would not be held by it. We were to go ahead and complete the job, and they would do whatever was right in the matter." Landon's testimony is corroborated in most particulars by that of the defendant Hansen, who said that Spore & Robinson told them " to go ahead, and we would do this work mutually. Q. When was it? A. Some time after we began ; six months after the job was started. Q. They repeated to you at that time you would all do the work mutually? A. Yes, sir. Q. Did that take the place of the former agreement? A. It did. It was our understanding that took the place of the written agreement at that time ; we had already consented." Elsewhere in the examination, in referring to what Robinson said about doing the work mutually, he was asked : " What did he say, if anything, about the division of the profits or anything of that kind?" and answered : " He said he would do whatever was right. There was nothing said as to the amount, or anything of that kind. He said, ' We will divide up,' or they would do what was right with us."

Captain George L. Goodale, U. S. A., who, as quartermaster, had charge of the construction of the buildings at Fort Columbia, testified that in July, 1901, he notified Hansen that Spore & Robinson could not sublet their contract; that about 60 days thereafter, having heard that Hansen & Landon claimed some interest in the contract, he was told by Robinson that there was no truth in the rumor, and about January, 1902, having again heard that Hansen & Landon were interested in the work, he notified Spore & Robinson, and was informed by each that the contract had not been sublet. In detailing the latter

interview, the witness testified as follows: "I said, 'Are Hansen & Landon nothing but employés of yours?' Mr. Robinson said, 'Yes.' " E. T. Williams, manager of the plaintiff corporation, testified that, having given Spore & Robinson a statement that the lumber and timber necessary to construct the buildings in question would be furnished at a certain value, Hansen & Landon inquired if they could secure material at the same price, and having received an affirmative answer, they ordered, and plaintiff shipped and billed to them, about $6,000 worth of lumber and timber, receiving in part payment thereof checks signed by Spore & Robinson, and countersigned by Hansen & Landon. On cross-examination, in answer to the question whether or not, in making such sales, plaintiff relied upon the credit of Spore & Robinson for payment, he said : " We were relying on the credit of whoever was doing the work. If Spore & Robinson had an interest in getting the money that was being paid out by the government, we relied upon them for the money ; we relied upon the people doing the work." G. A. Strout, plaintiff's bookkeeper, testified that, after shipping some of the material to Hansen & Landon, Spore called upon him and made some changes in and additions to the original order. The attention of this witness having been called to the material supplied by plaintiff after Hansen & Landon's contract is claimed to have been finally annulled, he was asked: "What proportion in value would you say was furnished after the 5th day of July?" and answered : "I could not tell without looking it up. My recollection is that it is more in amount than the balance due the company at the present time. That would be my best recollection." Landon also testified that after that time plaintiff furnished for the buildings at Fort Columbia a large quantity of flooring and finishing lumber.

The foregoing is a fair summary of the testimony given

by the plaintiff's witnesses when the motion for a judgment of nonsuit was interposed, and it remains to be seen whether or not it was sufficient to be submitted to the jury, as tending to prove that Spore & Robinson and Hansen & Landon were partners in the purchase, receipt, and use of the material, as alleged in the complaint.

Congress, in prescribing certain restrictions in relation to the performance of public contracts, enacted, *inter alia*, the following: "No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States:" Rev. Stat. U. S. § 3737 (U. S. Comp. St. 1901, p. 2507). It will be remembered that the contract entered into between the government and Spore & Robinson contained a clause in conformity with this provision. The testimony does not disclose that Hansen & Landon had seen the contract or knew that it contained such limitation, but it shows that the first intimation they had that Spore & Robinson could not sublet the work was when so informed by Captain Goodale. The contract having, in effect, been transferred, the government was authorized to annul it; and, this being so, the jury had the right to infer that it was to the advantage of Spore & Robinson, when they ascertained this fact, to make some arrangement with Hansen & Landon whereby the respective interests of each could be preserved. Landon testified that when it was discovered that the firm of which he was a member could not construct the buildings in their own names, it was mutually agreed that they should assist in the work, and that Spore & Robinson would make it right with them.

2. The relation existing between partners is of such a confidential kind that an addition to the number of persons constituting the firm cannot be made without the express or implied assent of all the members: 22 Am. & Eng. Enc. Law, (2 ed.) 157; Collyer, Partnership, (6 ed.) § 6; Parsons, Partnership, (4 ed.) § 9. The rule is universal that, as between the members of a firm, no partnership can be formed without an intention to enter into that relation: *Klosterman* v. *Hayes,* 17 Or. 325 (20 Pac. 426); *Flower* v. *Barnekoff,* 20 Or. 132 (25 Pac. 370, 11 L. R. A. 149); *Hanthorn* v. *Quinn,* 42 Or. 1 (69 Pac. 817). In *Willis* v. *Crawford,* 38 Or. 522 (63 Pac. 985, 64 Pac. 866, 53 L. R. A. 904), in denying a petition for a rehearing, it was said: "The plaintiff knew whether it was their intention to form a partnership, and, if such intention existed, it was his duty so to testify; and, having failed in this respect, we are compelled to overrule the petition." The appellants' counsel, relying on the language quoted, insist that it is applicable to the case at bar, and decisive of the question, for, Landon's attention having been called to the subsequent agreements, which it is claimed modified the original contract entered into with Spore & Robinson, he was asked: "Did you consider that created a partnership between yourselves and Spore & Robertson?" and replied: "I do not know that it was exactly a partnership. I would not know how to express myself. The way I understood it, we would go ahead and complete the contract, and we would receive some kind of consideration for our services." In the case to which attention is called, the parties were lawyers of learning and experience, and each knew what was necessary to constitute a contract of partnership. In the case at bar, however, Landon, so far as can be inferred from the bill of exceptions, was only a mechanic; and, while he and Hansen were partners, and he probably had a general knowledge of what constituted that relation, he

may not have known the legal requirements therefor, and hence the rule applied in the case relied upon is not suitable to the facts herein.

3. Hansen & Landon not having been held out to plaintiff as members of the firm of Spore & Robinson, the liability of the latter in such case must rest upon the intention of all the defendants to form a partnership: Story, Partnership, § 49. In the light of these rules, the testimony will be reviewed to determine whether or not it tended to show such intention. Landon, on direct examination, having testified that, in his conversations with Robinson, no definite compensation had been agreed upon, was asked: "Your agreement was, the two firms should jointly go ahead with the work, and there should be a fair division of the profits?" and answered: "Yes, sir. Q. Tell the jury"— Here the witness was interrupted by appellants' counsel, who objected to the question on the ground that it was misleading and immaterial, which objection was sustained. It must be assumed that the objection was intended to apply to the preceding question, but, as no motion was made to strike it out, the answer thereto went to the jury, as tending to prove the basis of the modified agreement. On cross-examination, in referring to what Robinson said, the witness was asked: "He did not say whether he would divide up the profits or losses?" and answered: "He left that impression. We had no other impression until after they had taken the money out." Though this answer is not responsive to the inquiry, the jury might reasonably have inferred therefrom a promise on Robinson's part to divide the profits and losses. Though the participation of profits and the apportionment of losses incident to the transaction of any business do not necessarily constitute a partnership (*Hanthorn* v. *Quinn*, 42 Or. 1, 69 Pac. 817), we think plaintiff's testimony, if believed by the jury, unquestionably tended to show an intention

on the part of Robinson to enter into that relation with Hansen & Landon.

It will be remembered that Landon testified that about October 1, 1901, when Spore & Robinson promised to make it right with them if they would assist in putting up the buildings, the conversation was had with "Spore & Robinson—Mr. Robinson principally." This witness, in speaking of who had actual charge of the work, said: "It was practically all four men—three men. Mr. Spore was on the ground. We consulted each other." He further said that Spore generally attended to the ordering of material. Strout also says that Spore made changes in and additions to Hansen & Landon's order for material. Captain Goodale testified that Spore told him the contract entered into between the government and Spore & Robinson had not been sublet.

4. In *Hobbs* v. *McLean*, 117 U. S. 567 (6 Sup. Ct. 870), a partnership having been formed for the performance of a contract which one of the members secured from the government, it was held that the creation of the firm for the purpose specified was not prohibited by the Revised Statutes of the United States. Mr. Justice Woods, speaking for the court, in deciding the case, says: "Nor are the articles of partnership forbidden by section 3737 (U. S. Comp. St. 1901, p. 2507). They do not transfer the contract, or any interest therein, to the plaintiffs, and cannot fairly be construed to do so. But if the articles of partnership were fairly open to two constructions, the presumption is that they were made in subordination to, and not in violation of, section 3737; and, if they can be construed consistently with the prohibitions of the section, they should be so construed, for it is a rule of interpretation that, where a contract is fairly open to two constructions, by one of which it would be lawful, and the other unlawful, the former must be adopted." Spore & Robin-

son's assignment of their interest to Hansen & Landon being liable to annul the government contract, but a partnership created for its performance being legal, the jury, from Spore's declaration to Captain Goodale that the contract had not been sublet, had a right to infer that he consented to the formation of a partnership between Spore & Robinson and Hansen & Landon. So, too, Landon's statements that the conversation about October 1, 1901, was with "Spore & Robinson—Mr. Robinson principally"; that "Spore was on the ground. We consulted each other"; and that "Spore generally attended to the ordering of materials"—tend to create an inference that Spore intended to form a partnership with Hansen & Landon in the construction of the buildings for the government. Hansen testified that an agreement was entered into with Spore & Robinson about January 1, 1902, mutually to do the work, which took the place of the prior contract, and thereafter Robinson had more authority, but continued to receive wages for his labor as superintendent until July, 1902, when their contract was wholly revoked. Landon testified that the agreement entered into with Spore & Robinson was annulled prior to July, 1902.

We think the testimony and the inferences of fact reasonably deducible therefrom, though very slight, tend to show that Spore and Robinson each intended to enter into a partnership with Hansen & Landon to construct the buildings at Fort Columbia. Whether or not the evidence was sufficient to show such a community of interest as to make each of the defendants a principal, and also an agent for his associates, authorizing each to make contracts, manage the business, and dispose of the property, and, in case of the death of one of the members the settlement of the joint effects would devolve upon the survivors, thereby conclusively establishing the existence of a partnership (*Hanthorn* v. *Quinn*, 42 Or. 1, 69 Pac. 817), were solely ques-

tions for the jury, and not within the province of this court to review in an action at law: *Brown* v. *Oregon Lum. Co.* 24 Or. 315, 33 Pac. 557. "A case," says SHATTUCK, J., in *Tippin* v. *Ward*, 5 Or. 450, in passing on this question, "should be submitted to the jury, unless there is an entire lack of evidence tending to maintain the issues on behalf of the plaintiff, or unless, upon the whole case made by the plaintiff himself, it appears beyond doubt that the plaintiff has no right to recover."

The plaintiff's manager having testified that, as its agent, he relied upon the persons doing the work, and it appearing that the value of the material sold and delivered by plaintiff after July, 1902, when it is claimed the contract was wholly annulled, was greater than the sum sought to be recovered in this action, no error, in our opinion, was committed in denying the motion for a judgment of nonsuit, or in refusing to instruct the jury to find for the appellants: *Kearney* v. *Snodgrass*, 12 Or. 311 (7 Pac. 309).

5. It is maintained by appellants' counsel that the court erred in admitting in evidence, over their objection and exception, checks issued by Spore & Robinson, and countersigned by Hansen & Landon. Testimony was introduced without objection, tending to show the method adopted of depositing and withdrawing the money received on account of the contract, and, as these checks confirmed such testimony, no error was committed in admitting them in evidence.

It is also contended by appellants' counsel that the court erred in admitting in evidence, over their objection and exception, the following correspondence: A letter written January 30, 1902, by the manager of the plaintiff corporation to Captain Goodale, requesting him to deliver an inclosed letter addressed to Spore & Robinson and Hansen & Landon, stating that plaintiff had furnished the lumber for the buildings at Fort Columbia; that he had written

them several times without receiving any reply; and inquiring if the contract had been completed, and what percentage of the price had been paid thereon; the letter inclosed with the one addressed to Captain Goodale containing a statement of account showing a balance of $4,638.18 due plaintiff; another letter, so inclosed, to the effect that the account was past due, and suggesting that an early remittance would be very much appreciated; and also a letter from Captain Goodale, written to plaintiff's manager, acknowledging the receipt of the letter addressed to him, stating he had forwarded the inclosed letters to Fort Columbia, Washington, to Spore & Robinson, who were the contractors, and Hansen & Landon, their employés, and regretting that he could not furnish the information desired as to the payments made on account of the contract. It is deemed necessary to give the substance of a letter written January 31, 1902, by Captain Goodale to Spore & Robinson, in which he states that he transmitted a copy of a letter received from the North Pacific Lumber Company, together with a letter inclosed, intimating that there was apparently a question with that corporation as to whom the lumber in question was sold, saying: "It is not understood at this office why such doubt or question should exist. You will please explain. Your attention is called to the provision in your bond relating to prompt, full payments to all parties furnishing material for work under government contract." An objection was interposed to the admission of the latter letter, but no ruling appears to have been made thereon, nor exception reserved. The letter written by Captain Goodale to Spore & Robinson was addressed to them as contractors. It is admitted that they had the contract for the construction of the buildings, and this note and the others tend to show that after they were sent to Spore & Robinson a payment was made to plaintiff on account of the lumber sold, from which the jury might

have inferred that they had at least some interest in the contract. The letter written by Captain Goodale to the manager of the North Pacific Lumber Company only confirms the statement made by Robinson to him, and although the communication could not have been of much importance, its admission was not, in our opinion, prejudicial.

6. It is insisted by appellants' counsel that the court erred in instructing the jury as follows:

"If you should find under the evidence that Spore & Robinson used language to Hansen & Landon which led them, and was intended to lead Hansen & Landon, to believe that they were to share as partners in this business, and Hansen & Landon did so believe, then Spore & Robinson would be bound by that agreement, as every man is bound by the construction of an agreement which he intended the other party should put upon it, whether they themselves intended finally to be bound by it or not. If, at the time these parties had this conversation which it is claimed they had with Hansen & Landon, they intended Hansen & Landon should believe they were to be recognized as partners and should share in the profits of the enterprise, and Hansen & Landon did believe it, and acted upon that belief, then they were partners."

We think this part of the charge was pertinent, and that no error was committed in giving it.

7. The judgment complained of was rendered against Spore & Robinson only, and in this we think there was error. The action was tried on the theory that Hansen & Landon were also partners with them. This created a joint liability (*Poppleton* v. *Jones*, 42 Or. 24, 69 Pac. 919), and a joint judgment should have been rendered against the entire partnership: B. & C. Comp. § 61; *Fisk* v. *Henarie*, 14 Or. 29 (13 Pac. 193); *Wilson* v. *Blakeslee*, 16 Or. 43 (16 Pac. 872); *Thomas* v. *Barnes*, 34 Or. 416 (56 Pac. 73).

The judgment will therefore be set aside, and the cause remanded, with instructions to enter a judgment against the entire firm.                                      REVERSED.