[No. 4761.   Decided September 21, 1904.]

HUGH McCONAGHY, *Appellant,* v. ALVA C. CLARK, *Respondent.*[1]

CONTRACTS — VALIDITY — CONSTRUCTION — CARRYING UNITED STATES MAIL—SUBSTITUTION OF CONTRACTORS—CONSENT AND APPROVAL OF GOVERNMENT—FAILURE OF PROOF—NONSUIT.   In an action for damages for breach of a contract to substitute the defendant for the plaintiff in a sub-contract for carrying the United States mail, a nonsuit is properly granted on the ground that the complaint fails to state sufficient facts, and that the proof was insufficient, where it is not alleged or proved that the original contractor consented to the substitution or that the postmaster general authorized and approved the same, it appearing from the contract that such consent and approval were necessary.

Appeal from a judgment of the superior court for King county, Morris, J., entered March 30, 1903, upon granting a nonsuit at a trial before the court and a jury, dismissing an action upon contract.   Affirmed.

*Frank B. Wiestling* and *William Martin,* for appellant.

*Greene & Griffiths,* for respondent.

PER CURIAM.—Plaintiff, Hugh McConaghy, sued defendant, Alva C. Clark, for breach of contract in the superior court of King county.   At the trial the plaintiff was nonsuited.   Thereupon in due time he made and filed his motion for a new trial, which was overruled.   Judgment was entered in the lower court dismissing the action, and plaintiff appeals.

The cause of action, as alleged in the amended complaint, is predicated upon the following written agreement, entered into between the parties, to wit:

[1]Reported in 77 Pac. 1084.

44-35 WASH.

"SUBSTITUTION OF A. C. CLARK, FOR HUGH McCONAGHY.

"Whereas Alfred Parker of London, Kentucky, did on the second (2nd) day of February, 1901, release one Hugh McConaghy from his obligations and liabilities on a certain United States mail service subcontract, dated July 2, 1898, for route No. 471,001. And whereas, the said Alfred Parker is desirous of substituting one A. C. Clark of King county, state of Washington, for, and in the place of said Hugh McConaghy. Now, therefore, the said Alfred Parker does hereby substitute the said A. C. Clark, for said Hugh McConaghy as party of the second part in said contract, and for value received, the said A. C. Clark does hereby substitute himself for, and in the place of said Hugh McConaghy, under said contract, as party of the second part. And the said Clark does hereby, for value received, agree faithfully on his part to perform each and all of the obligations and promises contained in said contract of July 2, 1898, on the part of the party of the second part, and said subcontract of said date is hereby referred to and embodied in, and made a part of this contract. And the said Alfred Parker, for value received, does hereby agree with the said A. C. Clark, that he will carry out with him his obligations in said contract, of July 2, 1898, to all intents and purposes as if the said Clark were the said McConaghy."

It is alleged in such complaint, that the parties to this written instrument

". . . made a mutual mistake regarding the recital therein contained, wherein it was stated that Alfred Parker did, on the 2nd day of February, 1901, release said Hugh McConaghy from his obligations and liabilities on a certain U. S. mail service subcontract dated July 2, 1898, for route No. 471,001, which said instrument is the same as exhibit 'A' herein referred to . . . in that said parties thereto both then and there well understood that said Hugh McConaghy had not, at that time, been so released by the said Alfred Parker."

It was further alleged that both of said parties (appellant and respondent) well know that appellant was still under

his obligations and liabilities contained in exhibit "A," and
that appellant had not been released therefrom.    The
exhibit "A" referred to was the subcontract for transport-
ing the mail on route No. 471,001, entered into between
Alfred Parker and Hugh McConaghy on July 2, 1898,
which was annexed to the complaint, and also referred to in
the agreement between McConaghy and Clark, above set
forth.    There is a recital in this exhibit to the effect that
the original contract for transporting the mail on route No.
471,001 was executed between the United States, by the
postmaster general, and Alfred Parker, and that condi-
tional permission was obtained to sublet the same to appel-
lant McConaghy.    Appellant further alleged, that he per-
formed all and singular his obligations, promises, and
duties to be by him performed under the agreement be-
tween him and respondent Clark; that respondent totally
failed to carry out or perform any of the obligations, cove-
nants, and promises to be performed by him, and especially

". . . failed, refused, and neglected to substitute
himself for and in place of said Hugh McConaghy under
the said contract herein referred to, to wit, exhibit 'A,' as
party of the second part therein, and the defendant totally
failed, refused, and neglected faithfully, or at all, on his
part, to perform any of the obligations and promises con-
tained in said exhibit 'A,' to be performed by the said
defendant, the party of the second part therein, and the
defendant refused to assume any of the obligations of the
plaintiff under said exhibit 'A,' by reason of such neglect
and refusal on the part of the defendant to enter into said
contract with said Parker and to carry out with said
Parker the obligations thereunder of the plaintiff, the
plaintiff was compelled to continue the performance of his
obligations to said Parker, whereby the plaintiff has suf-
fered damages at the hands of the said defendant in the
sum of six hundred dollars ($600), no part of which has
been paid."

Appellant prayed judgment for said amount, together with his costs and disbursements. Respondent in the court below demurred to this amended complaint, alleging, among other grounds, that it "does not state facts sufficient to constitute a cause of action." This demurrer came on for hearing before Hon. W. R. Bell, one of the judges of said superior court, and was overruled. The respondent, for answer to the complaint, denied all the material allegations thereof, except the allegation that he signed the paper writing therein set forth. The first affirmative defense charges that appellant procured the signing of the above contract by false representations. The second affirmative defense is as follows:

"Further answering said amended complaint, this defendant alleges that the said agreement referred to in paragraph two of plaintiff's complaint, and all negotiations with respect thereto between plaintiff and defendant, were conditioned upon the approval of said Parker mentioned therein, and of the government of the United States and of the postmaster general thereof, and that the approval of said Parker or of said government and of said postmaster general was never obtained, and that this defendant never qualified or became competent to act as mail carrier in accordance with the laws of the United States and postoffice requirements, and that plaintiff continued uninterruptedly, ever since before said agreement mentioned in paragraph two aforesaid was signed until after the commencement of this action, to perform the terms, conditions and requirements and to do the work referred to and required in said agreement between plaintiff and said Parker, and to receive the usual and contractual compensation for his services."

The reply is in the following words and figures, omitting the title of the action:

"Comes now the plaintiff, and by his attorney, Frank B. Wiestling, and for reply to the so-called answer or further answer to the complaint, as amended, alleges as follows: (1) He denies each and every allegation contained on

pages one, two, three, and four thereof, and especially denies that he has received any compensation since the 20th day of April, 1901, for the services mentioned on page four of said further answer to the amended complaint. Wherefore plaintiff demands judgment as is contained in his amended complaint."

The cause came on for trial before the superior court, with Hon. George E. Morris as the presiding judge thereof, and a jury. At the conclusion of the evidence in appellant's behalf, on motion of respondent's counsel, a nonsuit was granted upon the following grounds:

"(1) That the complaint does not state facts sufficient to constitute a cause of action; (2) that there is no evidence in the case showing any contractual relation between the plaintiff and the defendant; (3) that there is no evidence in the case that Mr. Parker consented to this alleged agreement of substitution; and (4) there is no testimony at all of any damage having been suffered by this plaintiff."

From an inspection of the pleadings filed by appellant, it is difficult to ascertain the nature of the issues tendered by him, with any degree of accuracy or precision. Under the ruling made by this court in *Shephard v. Gove,* 26 Wash. 452, Judge Morris had the legal right to pass upon, and determine, the sufficiency of this amended complaint at the trial, on the ground that it did not state facts sufficient to constitute a cause of action, notwithstanding the previous ruling of Judge Bell overruling the demurrer to such complaint. This pleading seems to be wanting in material averments, in that it fails to allege that Alfred Parker, the original contractor with the United States government concerning this mail service, ever consented to the substitution of respondent Clark in place of appellant McConaghy, with the approval of the postmaster general, representing the United States. It was necessary for appellant to allege and show, not only that this substitu-

tion was made with the consent and approval of Parker, but that such change was authorized and recognized by the postoffice department of the general government, or that Parker and the general government were ready and willing to accept such substitution. This conclusion is strengthened when we consider the provisions of the above exhibit "A," and the document thereto attached, designated as, "principal requirements of the United States for transporting the mails," on the routes of the character and kind named in the contract upon which the present action is founded. It appears that, from the contract between Parker and appellant, it was necessary for Parker to first obtain, from the postmaster general, conditional permission to sublet the same to appellant, which language plainly implies that such permission was to be thus obtained before the subletting contract to appellant became effectual. There is also a provision in these requirements, that, "This service is subject in all respects to the approval of the postmaster general." Wherefore, it is evident that even Parker himself could not have made such substitution complete without the consent of the postmaster general. The transportation of the mails is one of responsibility. In many respects it is both a personal and public trust. It involves important duties towards the general government, and it is necessary that the head of the postoffice department should know the party or parties who are engaged in such service. A subcontractor cannot, during the life of his contract for the transportation of the mails, change, at his own instance, his contractual relations with regard to such service; he must have the consent of his superiors.

The record discloses that the greater portion of the testimony was directed towards the alleged mistake in the recital contained in the above contract regarding the release of appellant "from his obligations and liabilities" on the

subcontract between him and Parker. It appears that the trial judge was very liberally inclined towards appellant, in allowing him to put in his evidence, not only with regard to such mistake, but also with reference to the alleged substitution of respondent for appellant in the mail service sub-contract with Parker. Conceding, for the purposes of this controversy, that the proofs adduced by appellant at the trial, when considered in connection with respondent's answer, showed prima facie that there was a mistake in that respect, still we are of the opinion that there was a failure of proof as to the alleged substitution of respondent for appellant in the matter of this alleged subcontract. Much of the testimony regarding this feature of the transaction was hearsay in character, and indirect in its tendency. There is no testimony that the postmaster general, acting in behalf of the United States, conditionally or otherwise approved this alleged substitution. The appellant's evidence only tended to show that Parker was willing to make the change, provided the necessary contract and bond therefor were forthcoming; that respondent was aware of some negotiations, the true nature of which does not appear, between Parker and appellant relating to such substitution, but that the same was not consummated for some reason not apparent from the evidence, or from any showing made in the record. The testimony leaves us in the dark as to whether this alleged failure was owing to the acts or defaults of respondent, or whether it was occasioned by circumstances over which both the appellant and respondent had no control.

The further contention of appellant that, under the showing made at the trial, he was at least entitled to recover nominal damages, is untenable for the reasons hereinbefore stated.

No reversible error appearing in the record, the judgment of the superior court must be affirmed.