## CHILBERG v. HEGNESS.

(Second Division.  Nome.  September 19, 1914.)

No. 2531.

1. PLEADING ⊚═══192(6)—DEMURRER—CONTRACT IN WRITING.

It is a fundamental rule in pleading that a demurrer will lie only for defects which appear upon the face of the pleading to which it is opposed; a written contract must be construed upon demurrer by the light afforded by the declaration or complaint; and not by circumstances suggested, but which do not appear upon the face of the pleading; the illegality of a contract sued upon must appear upon the face of the complaint, or it cannot be taken advantage of by demurrer.

2. PARTNERSHIP ⊚═══26—VALIDITY—PUBLIC POLICY—UNITED STATES MAILS.

The plaintiff and defendant entered into a written agreement to form a partnership, to obtain the U. S. mail contract from Nome to Unalakleet, Alaska; to provide the means of performing it and to divide the profits resulting therefrom upon an agreed percentage basis, after the objects of the contract were completed; on demurrer to a complaint setting up the facts, held, the contract sued on is not objectionable to any statutory inhibition, has no apparent evil tendency, and is not void as against public policy.

3. PARTNERSHIP ⊚═══5—CONTRACT.

Where plaintiff and defendant entered into a written agreement to obtain a mail contract in Alaska, to provide the means of performing it, agreeing to divide the profits after the government has paid the contract price, each contributing property and services and having a community of interest in the enterprise, held, they are partners, with the usual duties and obligations toward each other.

The complaint in this case sets up an alleged written contract of partnership between the plaintiff and the defendant concerning the obtaining of a mail contract and the carrying of

mail between certain points in Alaska, Second division. The alleged contract is fully set forth in the complaint, and is as follows:

Memorandum of agreement, made and entered into this 25th day of August, 1909, by and between Eugene Chilberg, of Nome, Alaska, party of the first part, and John Hegness, also of Nome, Alaska, party of the second part, witnesseth:

That whereas, the parties hereto are desirous of securing mail contract to carry the United States mail between Nome, Alaska, and Unalakleet, Alaska, and are desirous of bidding upon proposal route No. 78136 and proposal route No. 78137, in the name of the party of the second part; and

Whereas, the parties are desirous of forming a copartnership for the purpose of operating the said mail routes, or either of them, should the said contracts be obtained, and are desirous of evidencing the terms of their said copartnership in writing:

Now, therefore, for and in consideration of the mutual promises and other good considerations, it is agreed by and between the parties hereto as follows:

First. That each of the parties hereto shall endeavor so far as he can to obtain the said contracts above mentioned, or either of them, and to that end the party of the first part agrees to advance all necessary funds needed for that purpose and to obtain the bond required in the proposals for said mail routes, and if either or both of said contracts are secured, party of the first part agrees to furnish the necessary bond required by the government therefor, and to advance the necessary money to begin to operate the said mail route or routes under the said contract or contracts until the payments are made by the government according to the contract or contracts.

Second. Party of the second part agrees to furnish his dog team, sled and equipment, and give his personal services as a carrier on said route or routes, and shall reside, when not on the mail route, in the town of Nome, and give his personal attention and supervision to the fulfilment and carrying out of the said contract or contracts, if the same is obtained in his name as bidder.

Third. That the party of the second part shall receive the same compensation for his personal services for his attention to the said work as the other carriers employed by the partnership, and shall receive in addition thereto fifteen per cent. (15%) of the net profits derived or made from the said contract or contracts after all expenses are paid.

Fourth. That the party of the first part for his share shall receive eighty-five per cent. (85%) of the net profits derived or made from the said contract or contracts after all expenses are paid for operating the same.

Fifth. That all warrants issued and delivered by the government in payment under the said contract or contracts shall be signed by the party of the second part and delivered to the party of the first

part, his representative or agent, who shall keep a strict and accurate account of the same and act as treasurer of the partnership.

In witness whereof the said parties hereto have hereunto set their hands and seals the day and year first above written.

Eugene Chilberg.  [Seal.]

John Hegness.  [Seal.]

Signed, sealed, and delivered in the presence of:

William A. Gilmore.

Mabel Searl.

Plaintiff alleges that the defendant has already disregarded this contract and threatens to further disregard the same, and alleges generally a disagreement between the parties as to a division of the profits arising from said contract, etc. The complaint then prays for a temporary restraining order against the defendant until a final hearing of the same, and that an accounting may be had as to the funds of said partnership.

To the complaint, the defendant interposes a general demurrer: First, on the ground that such contract is illegal, because against public policy; and, second, that neither the allegations of the complaint nor the terms of the alleged contract show a legal partnership between the parties but only an ordinary contract, in which the plaintiff is merely a contract creditor of the defendant.

W. A. Gilmore, of Seattle, Wash., and G. B. Grigsby, of Juneau, for plaintiff.

G. J. Lomen, of Nome, and Ira D. Orton, of Seattle, Wash., for defendant.

TUCKER, District Judge. The law as especially applicable to the consideration of the demurrer in this case may be stated as follows:

"It is a fundamental rule of pleading that a demurrer will only lie for defects which appear upon the face of the pleading to which it is opposed."

And in an action upon a written contract the contract must be construed upon demurrer by the light afforded by the declaration alone, and not by circumstances suggested, but which do not appear upon the face of the declaration, and, further, the illegality of a contract sued upon must appear upon the face of the complaint, or it cannot be taken advantage of by demurrer. Encyc. Plead. & Prac. vol. 6, p. 297, and cases cited in note 4.

Generally and affirmatively speaking, it is undoubtedly the law that a contract against public policy is illegal and cannot be enforced; but, as said in McCowen v. Pew, 153 Cal. 735, 96 Pac. 893, 21 L. R. A. (N. S.) 800, 15 Ann. Cas. 630:

"A contract should not be declared in contravention of public policy unless it is apparent that it controverts some public statute, or is against good morals, or that its tendency is to interfere with the public welfare or safety."

In the last analysis, therefore, every case must be determined upon the particular facts involved, or upon the facts as presented by the pleadings. Confining myself, therefore, to a consideration of the contract, as set forth in the complaint, as we are bound to do, in passing on the demurrer, I am unable to declare the contract in this case to be illegal.

Counsel for defendant has cited numerous cases in support of his contention that this contract is illegal on its face, as against public policy. But these cases were either not decided upon demurrer, or else the facts in them were so different as to be inapplicable here. In McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117, the facts of that case are totally different from the facts here, and the evil intention of the parties, as well as the evil tendency of the contract, was most flagrant. I fail to see, as was held in that case, where the contract here discloses any tendency to lessen the bids, or that the parties thereto committed fraud in combining their interests and concealing the same, and submitting different bids as if they were bona fide. The contract here shows on its face nothing more nor less than an agreement that the parties shall endeavor to obtain a contract for carrying the mail in Alaska, and that they shall divide the net profits upon an agreed percentage basis, after the objects of the contract are completed, and after the money due on same is paid by the United States. There is no suggestion of a purpose to lessen the bids, nor is that the effect or tendency of the contract.

In King v. Winants, 71 N. C. 469, 17 Am. Rep. 11, the parties were rival bidders for a government contract, and it affirmatively appeared that they agreed not to bid against each other, so as to enable one or both to get the contract at a much higher rate, and to divide the profits among them. There was nothing of the kind in this case, or, at least, the contract does not show such state of facts on its face. Much stress was

placed in argument upon the case of Tool Company v. Norris, 2 Wall. (69 U. S.) 45, 17 L. Ed. 868. In that case there was an agreement for compensation (contingent) for procuring a contract from the government for furnishing its supplies. The precise terms of the contract do not appear, but no one can read the statement of the facts without being shown the lobbying done by the plaintiff and the lobbying character of his contract. I am aware that it was said in that case that "agreements for compensation contingent upon success suggest a use of sinister and corrupt means for the accomplishment" of their ends; but this case can have no just application to the contract now under consideration—a contract of partnership to obtain a mail contract and to divide the net profits after the government payments are completed, without a scintilla of evidence of any lobbying influence, so glaring in the Tool Case. From the very nature of the contract in the Tool Case, its lobbying and corrupting tendency was obvious, and the personal conduct of the plaintiff, as shown by the evidence, deserved the severest censure and condemnation.

In Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 899, the case went to a jury upon the evidence. The contract was for the appointment of a special counsel for the government upon a contingent fee. The facts of the case show fraud, and the tendency of the contract involved necessarily the device of lobbying and undue solicitation for said employment.

The case of McConaghy v. Clark, 35 Wash. 689, 77 Pac. 1084, is so totally unlike the case here, that it is hardly necessary to refer to it. It was substantially, however, a question of substituting another for the real mail contractor, which, of course, the court held could not be done without the consent of the Post Office Department. No such substitution was contemplated in the contract involved in this case.

The case of Marshall v. B. & O. Railroad Co., 16 How. 314, 14 L. Ed. 953, was clearly a lobbying contract of the first order, and can have no bearing on the case here. So was the case of Trist v. Child, 21 Wall. 441, 22 L. Ed. 623, clearly a case of a contract for "lobbying services." In the last case the court said (21 Wall. at page 451, 22 L. Ed. 623):

"The agreement in the present case was for the sale of the influence and exertions of the lobbying agent to bring about the passage of a law for the payment of a private claim, without reference

to its merits, by means which, if not corrupt, were illegitimate, and, considered in connection with the pecuniary interest of the agent at stake, contrary to the plainest principles of public policy. No one has a right, in such circumstances, to put himself in a position of temptation to do what is regarded as so pernicious in its character. The law forbids the inchoate step, and puts the seal of its reprobation upon the undertaking."

While this court heartily indorses the language above quoted, in this case it sees no application to the facts of the case cited by the defendant; and, while it also indorses the language of the court in McMullen v. Hoffman, supra, condemning contracts that tend to lessen competition and suggest a fraudulent combination of interests and concealment by the parties to it, it fails to discover on the face of the contract alleged in the complaint here, any such suggestion that would bring this contract within any of the cases above referred to.

As opposed to the cases relied on by the defendant, we now consider the case of Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940. That case was not a mail contract, it is true; but the essential facts of the case are almost identical with the case at bar. It was a partnership formed with respect to a government contract which the party expected to and did subsequently obtain. The contention that this contract was evil in its intention could have been advanced as forcibly in that case as in the case at bar, but it was scarcely considered. The court confined itself almost entirely to the question as to whether there was an assignment such as is forbidden by sections 3477 and 3737 of the Revised Statutes (U. S. Comp. St. 1916, §§ 6383, 6890). Comparing the case at bar with the many cases cited by the defendant and heretofore referred to, in which the facts and circumstances appear showing the evil tendency of the particular contracts, emphasizes the fact that a contract which simply purposes to obtain a government contract and to divide the net profits therefrom, should not be declared void on its face. This case of Hobbs v. McLean also disposes of the contention that there is any assignment of a claim against the United States by the contract alleged here, as being forbidden by sections 3477 and 3737 of the Revised Statutes, as was the case in Spofford v. Kirk, 97 U. S. 484, 24 L. Ed. 1032, and the other cases cited in Hobbs v. McLean and relied on by the defendant. The court said

in Hobbs v. McLean, 117 U. S. at page 575, 6 Sup. Ct. at page 873 (29 L. Ed. 940):

"When the contract of partnership was made, Peck (who stands in the position of the plaintiff here) had no claim which he could present for payment, or on which he could have brought suit. He therefore had no claim the assignment of which the statute forbids. It is so clear that the articles of partnership do not constitute such an assignment as is forbidden by the section under consideration that it would be a waste of words further to discuss the point."

And, as especially applicable to the case at bar, the court. further said (117 U. S. on page 576, 6 Sup. Ct. on page 874 [29 L. Ed. 940]):

"For it is a rule of interpretation that, where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted."

And further:

"Interpreting the articles in the light of the statute, as it is the duty of the court to do, they were not intended to transfer, and do not transfer, to the plaintiffs any claim of demand, legal or equitable, against the United States, or any right to exact payment from the government by suit or otherwise. They may be fairly construed to be the personal contract of Peck, by which, in consideration of money to be advanced and services to be performed by the plaintiffs, he agreed to divide with them a fund which he expected to receive from the United States, on a contract which he had not yet entered into. This is the plainly expressed meaning of the partnership contract, and it is only by a strained and forced construction that it can be held to effect a transfer of Peck's contract with the United States and to be a violation of the statute."

This language of the court in Hobbs v. McLean, supra, could scarcely be more apposite to the case at bar; and an examination of that case, comparing therewith McMullen v. Hoffman, supra, and similar cases, marks to my mind a clear distinction between the latter cases and the case at bar. See, also, Northern Pacific Lumber Co. v. Spors, 75 Pac. 890, following Hobbs v. McLean; also Dulaney v. Scudder, 94 Fed. page 6, 36 C. C. A. 52.

The case of Bellows v. Russell, 20 N. H. 427, 51 Am. Dec. 238, held:

(1) That an "agreement that one shall bid for several for a mail contract is not void, unless made for some illegal purpose, affecting public policy," and

(2) "Whether a contract was made for an illegal purpose is a question of fact for a jury."

And this was the holding of the court, notwithstanding that, "when the contract was made, the parties met, and, learning that each intended to bid for the mail route named and had made some preparation for that purpose, entered into the written contract," which was quite similar to the contract here. See, also, the case of Breslin v. Brown, 24 Ohio St. 565, 15 Am. Rep. 627, which is also quite similar to the case at bar.

An attentive reading of the citations by defendant's counsel from Lindley, page 181, and Parsons, § 39, will, I think, show that they do not support his contention, or do not apply to the case here. The contract, stripped of all surplusage, is simply one between the parties:

(1) To obtain the mail contract;

(2) To provide the means of performing it; and

(3) To divide the net profits, after the government has paid over the money.

That, and that only, is the meaning and scope of the partnership. The contract here does not contemplate a partnership as to the administration of the actual business of the office of postmaster, as suggested by Mr. Parsons, supra, nor does it pretend to be a partnership, with all the incidents of that relation of the parties as to creditors, etc. It is merely a partnership inter sese for the purposes indicated above. If it be true, as the inevitable result of defendant's argument, that all contracts to obtain a government contract are against public policy and illegal, then this contract should be condemned; but manifestly this is not the law as declared by the Supreme Court in Hobbs v. McLean, supra, and other similar cases cited by that court. In a note to Houlton v. Dunn, 30 L. R. A. 737, it is said:

"The line of demarcation between contracts for procuring legislation which are upheld and those which are condemned seems to be well drawn. All contracts for legitimate professional services for a fixed compensation are enforced, while those for a contingent fee, or which require personal influence, personal solicitation of members, or any trickery or underhanded means to secure the legislation, are not enforced. * * * There are many expressions in opinions of the courts which would lead to a general condemnation of all contracts to procure legislation, and some decisions tending also in that direction. But those expressions are not intended to apply to

cases of legitimate services, and the decisions are usually in cases where some evil tendency or influence was apparent. There seems to be no case in which legitimate services for a fee payable absolute have been condemned."

See, also, Stroemer v. Van Orsdel, 74 Neb. 132, 103 N. W. 1053, 107 N. W. 125, 4 L. R. A. (N. S.) 213, and note, 121 Am. St. Rep. 713.

We think this a correct statement of the rule in full accord with Supreme Court (United States) decisions, and, while it is made with reference to the procuring of legislation, there is no reason why it should not apply to cases of obtaining mail contracts, and the test of their legality or nonlegality made to depend on the fact as to whether or not the contract is legitimate with reference to all the circumstances of each particular case, to be inquired into by the court or jury. If this be so, the contract here, being unobjectionable to any statutory inhibition, under the decision of Hobbs v. McLean, supra, should not be condemned by sustaining the demurrer, unless some evil tendency is apparent upon the face of the contract, and surely nothing of that character is apparent upon the contract alleged in the complaint.

With respect to the second ground of the demurrer, that the complaint, or alleged contract therein, does not state a legal partnership, or, rather, that the relation of partners does not exist between the plaintiff and the defendant, it seems very clear to the court, from the terms of the written contract itself, that it was the intention of the parties to form a partnership inter sese. The plain declaration of the partnership in the written contract, taken alone, is a high, if not conclusive, test of the intention of the parties to form a partnership inter sese, and to join together to carry on a trade or adventure for their common benefit; each contributing property and services, and having a community of interests in the profits. As between themselves, the written contract shows unmistakably their intention to form the partnership, with all the requisites of a joint purpose, a joint contribution of services and money, and a community of interests in the net profits.

In most of the cases wherein the question has arisen as to whether or not there was a legal partnership between persons who had been dealing together, or jointly, with reference to certain transactions, or property, there did not appear in the

written contract, if there was one, any, or rather a positive, declaration of the partnership, or it has arisen with respect to the partnership quoad its liability to creditors. Questions of this kind are often difficult of solution, but no such state of facts exists in the case at bar.

Without stating specifically wherein they are applicable to this particular case, the well-known maxims of equity, that "he who seeks equity must do equity," and "he who comes into equity must come with clean hands," are cited in defendant's brief. Presumably they are cited with reference to the seemingly gross inequality of a division of the net profits between the parties as provided by the contract. It is sufficient to say with respect to that matter that it is a feature of the case which may not be considered on the demurrer, but may come up for consideration and determination when the case is heard on its merits. See Fechteler v. Palm Bros., 133 Fed. 466, 66 C. C. A. 336; Fleming v. Lee, 109 Fed. 953–955; Meehan v. Valentine, 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835; and a very learned and elaborate note to Cudahy Packing Co. v. Hibou, 18 L. R. A. (N. S.) pages 981, 982, 983, et seq., and page 1105.

Having reached the conclusion, therefore, that the contract alleged by the complaint is not illegal on its face, that it does not contravene any of the provisions of the Revised Statutes of the United States, and that the complaint sufficiently states and shows the existence of a legal partnership between the parties, and in view of the positive allegations of the complaint of the defendant's insolvency, his actual and threatened diversion of the partnership funds still payable by the government, and the evident necessity for an accounting between the parties, I am of opinion that the case presented is one of equitable cognizance and demands the equitable interposition of the court. See High on Receivers, under title of "Injunctions," p. 492, § 760 et seq.

For these reasons, the demurrer is overruled, and the restraining order may be allowed until the final hearing of the case; and it is so ordered.