Argued October 6, affirmed December 26, 1975, petition for
rehearing denied January 20, 1976

ISOM, *Appellant, v.* RIVER ISLAND SAND &
GRAVEL, INC., nka CONSTRUCTION
EQUIPMENT, INC. ET AL, *Respondents.*

543 P2d 1047

*James E. Redman* of Redman & Carskadon, Milwaukie, argued the cause for appellant. With him on the brief was Gerald R. Pullen, Portland.

*Edward H. Warren,* Portland, argued the cause for respondents. With him on the brief were William H. Mitchell, and Hershiser, Mitchell & Warren, Portland.

## BRYSON, J.

This is an action to recover damages for personal injuries. Plaintiff was seated in a parked car which was struck by defendants' truck and appeals from a judgment entered on a defendants' jury verdict.

Defendant Larum D. Bradley was employed as a truck driver by defendant River Island Sand & Gravel, Inc. At the time of the accident Bradley was driving a loaded dump truck. The accident occurred at a curve on South Fishers Mill Road in Clackamas County. As Bradley approached the curve he slowed his truck from approximately 40 miles per hour to 35 miles per hour, using his jake brake, which applies

compression, and wheel brakes. Bradley testified he steered to the right in order to avoid an oncoming vehicle on the wrong side or middle of the road:

"A  *  *  * so to avoid an accident I moved over as far as I could safely and still stay on the road, and when I did this why the edge of the pavement crumbled and this shifted the weight of the truck. The box seemed to lift a little bit and this threw the weight from the front, you might say, to the back. It shifted the direction of the truck someway and I headed across the road. Nothing I could do, it was too short a distance. I tried to stop, and I hit the car that was parked."

Officer Forristall arrived at the scene shortly after the accident. He testified that Bradley stated he had "oversteered" the truck in his attempt to bring the truck back onto the pavement.

Plaintiff's witness, a Reverend Kenneth Larsen, observed the dump truck before it entered the curve and collided with the parked car.[1] Larsen testified, "that truck was really going wild. * * * I've never heard a vehicle coming down the road with that much noise before."

Plaintiff first assigns as error the trial court's ruling on defendants' objections to the following questions:

"Q  All right. Were you able to form an opinion of speed, Reverend, prior to you losing sight of the truck?

"A  Not as—when I first saw it and watched it and heard it my opinion was that it was going fast.

---

[1] Larsen observed the truck from a knoll which is more than a quarter of a mile from the scene of the accident. From this knoll portions of South Fishers Mill Road are visible approaching the knoll and curve. Larsen could see the truck as it headed toward the knoll but could not see the accident scene.

"[Defendants' counsel]: Well, your Honor, that—

"THE WITNESS: It's an opinion.

"[Defendants' counsel]: Your Honor, I ask to have that stricken. It's not responsive to the question. The question is, does he have an estimate of the truck's speed.

"THE COURT: Answer yes or no, Reverend.

"THE WITNESS: What was the question again?

"[Plaintiff's counsel] Well, the Judge's ruling is that you can answer my next question yes or no, and my question is, were you able to form an estimate of the speed of the truck when you saw it?

"A  Not in miles.

"Q  Okay. Is there some other description you could give to it?

"A  By observing the truck it sounded as if it was—

"[Defendants' counsel]: Your Honor, I'm going to object to that. I think if he has an estimate in miles, that's one thing—

"THE COURT: All right, I'll sustain the objection."

Plaintiff first contends "[t]hat Reverend Larsen's testimony regarding the rate of speed of defendants' vehicle was worth consideration by the jury should be beyond question" and that "a witness can estimate speed by *sound* of the vehicle involved when he observed the vehicle in motion." (Emphasis theirs.)

In *Thomas v. Dad's Root Beer, Etc.*, 225 Or 166, 168-69, 356 P2d 418 (1960), we stated:

"* * * Competent and qualified eyewitnesses who have observed a vehicle in motion are qualified to testify as to its rate of speed at the time

of the accident. *Baley v. Rhodes, Adm.*, 202 Or 511, 276 P2d 713. If the witness only heard the sound of the vehicle, he may testify whether its movement was rapid or slow, but not as to the rate of speed in miles per hour. *Marshall v. Mullen*, 212 Or 421, 320 P2d 258. * * *"

Witness Larsen heard the sound from the truck and observed the truck until it disappeared from his view some distance from the accident scene. However, he testified he could not estimate the speed of the truck in miles. Larsen further testified:

"Q And do you believe that you—in this instance that you may have associated loud noise with speed?

"A No. No, I didn't. I had never—see, a lot of trucks take that road and it's a common occurrence for gravel trucks to go along that road, and I just never heard that much noise before. To me it was either trying to brake or shifting down.

"Q Trying to brake or shifting down?

"A Right. But that was more than a quarter of a mile back from the incident. I heard it—well, several seconds before it came into view, and where it came into view was a quarter of a mile."

■ Plaintiff also argues that "the witness [Larsen] was not allowed to express his opinion that the truck was going 'fast'." As we view the record, the witness did testify that the truck "was going fast" and this testimony was not stricken from the record nor was the jury instructed to disregard this testimony. Defense counsel asked that this testimony be stricken but the trial court did not so order or instruct the jury. Until the court does so, the testimony remains as evidence for the jury to consider. *Cross et ux v. Harris*, 230 Or 398, 409, 370 P2d 703 (1962).

In *North Pacific Lum. Co. v. Spore*, 44 Or 462, 471,

75 P 890 (1904), as in the case at bar, the trial court sustained counsel's objections to the admission of certain testimony but did not strike the testimony nor instruct the jury to disregard it. We held:

"* * * [A]s no motion was made to strike it out, the answer thereto went to the jury, as tending to prove the basis of the modified agreement. * * *"

See also, Wills v. Petros et al, 225 Or 122, 133, 357 P2d 394 (1960).

■ While the questioning of the witness and his nonresponsive answers did not proceed in the most orderly manner, it is difficult to perceive how the testimony which plaintiff claims was excluded could have influenced the jury in reaching a different verdict. Witness Larsen had, without objection, testified that the truck was "really going wild" and that he heard "the crunch of metal" and a "big bang" and the light pole in front of him was "pulled way over and swooped back, and then all the lights went out in the area."

Further, defendant Bradley, when testifying, conceded that given the truck speed and existing road conditions prior to his losing control, he could not have stopped the truck from the time he lost control until he struck the car. We find no error as contended in this assignment.

The plaintiff next contends that the court erred in excluding certain photographs from evidence pursuant to defendants' objections.

■ Plaintiff stated, "Your Honor, we offer these exhibits for the limited purpose of showing by the witness where he saw and heard the truck. * * * We simply want to show the position on the road that the witness saw—." The series of photographs showed what defendant Bradley might have seen as he drove

along South Fishers Mill Road toward the curve some distance from the accident. The photographs were taken one week before trial, and the road had been widened, marked with a center no passing line and a fog line. Also, the photographs showed improvement to the shoulders of the road. Other photographs of the roadway and scene taken by Officer Forristall shortly following the accident had previously been received in evidence. Officer Forristall testified these photographs accurately portrayed "the various scenes of the accident."

The trial court concluded that the plaintiff's photographic exhibits were not helpful and that it would be preferable if Larsen would "testify in distance how far away he was and so forth." Accordingly, Larsen drew a diagram that was received in evidence which explained where he stood, what he could see, and the varying distances. We conclude the trial court did not abuse its discretion in excluding photographic exhibits which showed altered conditions in the roadway. The determination of the question was addressed to the sound discretion of the trial court. *Butler v. Pantekoek,* 231 Or 563, 565, 373 P2d 614 (1962).

Lastly, plaintiff contends the trial court erred in denying his motion for a new trial based on the grounds of juror misconduct. ORS 17.610(1), (2). After the jury was discharged, plaintiff discovered that the jury foreman, Robert A. Sprouse, was president of Sprouse-Reitz Co., Inc. The company, as distinguished from the juror, was a codefendant in a personal injury action then pending in Multnomah County Circuit Court. On appeal plaintiff makes the following contentions: (1) the juror, Robert A. Sprouse, had been employed by Sprouse-Reitz for a number of years and was president of the company at

the time of trial and had been so for about one year; that Sprouse described himself during the voir dire "as an 'executive' with this company"; (2) that Sprouse was foreman of the jury, and Sprouse-Reitz was co-defendant in a case on the trial court calendar in Multnomah County Circuit Court and that Sprouse "did not disclose these facts during voir dire examination"; (3) another defendant "in the * * * [pending] case was represented by the same law firm which was representing defendants in the case at bar, but defendants' trial counsel had no knowledge of this fact"; (4) "On voir dire by plaintiff's counsel Juror Sprouse stated he did not believe anything had crossed his mind that would make him uncomfortable as a juror in this case. On questioning by defendants' counsel, he was asked 'Have you ever been sued before?', and he stated 'No, I haven't.' "

At the time of arguing the motion for a new trial, plaintiff subpoenaed John Edward Sprouse, secretary of Sprouse-Reitz and brother of juror Robert A. Sprouse, as a witness.

■ In appeals from the denial of a motion for a new trial, we generally defer to the discretion of the trial court except for an abuse of such discretion. *Burnett v. Weinstein,* 154 Or 308, 59 P2d 258 (1936); *State v. Tracy,* 246 Or 349, 356, 425 P2d 171 (1967). *See also Beglau v. Albertus,* 272 Or 170, 536 P2d 1251 (1975). As the trial court noted, much of what plaintiff now complains of could have been brought out on voir dire. *See State v. Benson,* 235 Or 291, 294, 384 P2d 208 (1963).

We have examined the testimony of John Edward Sprouse and there is nothing in the record that would indicate that juror Robert A. Sprouse was aware of the pending litigation against the Sprouse-Reitz Company. Witness John Edward Sprouse testified, "I

really don't know" when asked regarding his brother's knowledge of pending litigation. The court stated:

"* * * He [John Edward Sprouse] can't answer for his brother [the juror]. His brother's the only one that knows whether or not he had personal knowledge of the pending lawsuit."

In the motion for a new trial, no effort was made to call juror Robert A. Sprouse as a witness as provided for by Rule 2.02(2)(a), Rules of the Circuit Court, Fourth Judicial District, Oregon.

On voir dire plaintiff inquired of juror Sprouse as follows:

"Q   Mr. Sprouse, what do you do for a living, sir?

"A   I am an executive with Sprouse-Reitz Company, a general merchandise chain.
"* * * * *.

"A   * * * [W]e operate a chain of variety stores in the twelve western states.
"* * * * *.

"Q   From the nature of the case and the questions and remarks made so far in court, has anything crossed your mind that would make you uncomfortable as a juror in this case?
"A   No, I don't believe so."

The defendants' inquiry on voir dire of juror Sprouse disclosed the following:

"Q   Have you ever been sued before?
"A   No, I haven't.
"* * * * *.

"Q   Okay. Now, you are sure that you can set those things, other outside factors, aside and decide this case on the evidence and what the Judge instructs you on the law?
"A   Yes."

On further voir dire questioning by defendant, juror Sprouse revealed that he was acquainted with Dr. Dow, a neurologist, and Dr. Dewey, a psychologist, called as witnesses by plaintiff, and that they had treated his 13-year-old daughter.

■ Nothing was concealed or misrepresented by juror Sprouse. He stated that he was an executive of a company which bore his name. In the context of the questions that were put to him, it was reasonable for him to believe that the parties were interested in knowing whether he had been personally involved as plaintiff or defendant in a personal injury action. Mr. Sprouse was not a defendant in the action then pending against the company in Multnomah County Circuit Court, and there is no evidence that he knew of pending litigation against the company. The attorney for the defendants in the instant case filed an affidavit in the motion for a new trial stating, "that I had no knowledge that our firm was involved in this [pending] litigation, nor did I have any knowledge that Sprouse-Reitz was a defendant in said litigation." Plaintiff's brief acknowledges this fact. Under these facts we conclude that the trial court did not abuse its discretion in denying plaintiff's motion for a new trial.

Affirmed.